STATE MEDICAL BOARD OF THE ARKANSAS MEDICAL SOCIETY V. McCRARY.

Opinion delivered June 27, 1910.

1. PHYSICIANS AND SURGEONS—REVOCATION OF LICENSE.—Acts 1909, c. 219, § 8, impowering State Medical Boards to revoke a license to practice medicine, among other causes, for "publicly advertising special ability to treat or cure chronic and incurable diseases," is not unconstitutional as depriving the person whose license is revoked of his property without due process of law. (Page 514.)

2. SAME—REVOCATION OF LICENSE—VALIDITY OF STATUTE.—Acts 1909, c. 219, § 8, impowering State Medical Boards to revoke the license of one who publicly advertises "special ability to treat or cure chronic and incurable diseases," is not too vague and indefinite to be enforced. (Page 516.)

Appeal from Pulaski Chancery Court; *John E Martineau,* Chancellor; reversed.

STATEMENT BY THE COURT.

A. S. McCrary was duly notified to appear before the State Board of the Arkansas Medical Society in the hall of the House of Representatives, in the State House, in the city of Little Rock, Arkansas, on November 10, 1909, and show cause why his certificate to practice medicine in said State should not be revoked under subdivision (d) of sec. 8 of act 219 of the Arkansas General Assembly, approved May 6, 1909. It is as follows:

"Section 8. Every person residing in this State, or coming into it, of the age of twenty-one years, who has not heretofore been licensed to practice medicine under the existing laws, making application to register under the provisions of this act for the purpose of practicing medicine in this State, shall first make application to the secretary of the board representing the school of medicine from which he graduated, and his application shall be accompanied by a fee of fifteen dollars, this fee being for examination and registration before the boards. The applicant shall present to the board satisfactory evidence of graduation from a reputable medical school, and a school shall be considered reputable within the meaning of this act whose entrance requirements and course of instruction are as high as those adopted by the better class of medical schools of the United States. Such examination may be written or oral, and shall be of a practical

character and conducted on the scientific branches only, and shall include anatomy, physiology, medical chemistry, materia medica, therapeutics, theory and practice of medicine, pathology, bacteriology, surgery, obstetrics, gynecology and hygiene. All questions and answers, with grades attached, shall be preserved by the secretary for one year.

"If in the opinion of the board the applicant possesses the necessary qualifications, the board shall issue to him a certificate. The boards may, at their discretion, arrange for reciprocity in license with the authorities of States and territories having requirements equal to those established by the boards, and every person desiring license under reciprocity must make application to the secretary of the board representing the school of medicine from which he graduated. License may be granted applicants for license under such reciprocity on payment of twenty-five dollars.

"The boards may refuse to grant or may revoke a license for the following causes, towit:

"(a)    Chronic and persistent inebriety.

"(b)    The practice of criminal abortion, either as principal or abettor.

"(c)    Conviction of the crime involving moral turpitude.

"(d)    Publicly advertising special ability to treat or cure chronic and incurable diseases.

"(e)    The representation to the board of any license, certificate or diploma which was illegally or fraudulently obtained, or the practice of fraud or deception in passing the examination.

"In complaints for violating the provisions of this section, the accused person shall be furnished a copy of the complaint, and given a hearing before said board in person, or by attorney, and any person after such refusing or revocation of license, who shall attempt or continue the practice of medicine, shall be subject to the penalties hereinbefore described."

On November 10, 1909, Dr. McCrary filed a complaint against said board and the members thereof to enjoin them from acting on the complaint filed against him before said board. With his petition he filed the following exhibits:

First. The notice served on him to appear before the State Medical Board and show cause why his license to practice medicine in the State of Arkansas' should not be revoked.

Second. The complaint filed against him before said board. It charged that he had violated subdivision (d) of the above quoted act "by publicly advertising special ability to treat or cure chronic and incurable diseases," in violation of the terms thereof.

Third. A verbatim copy of his advertisement, stating his success and ability to cure certain ailments.

It is not necessary to set out his advertisement; for it seems to be conceded that, if the act in question is constitutional and is not void for uncertainty, the advertisement falls within its prohibition.

The board demurred to the complaint. The court overruled the demurrer on the ground that subdivision (d), which authorized the board to revoke the license of a physician if he "publicly advertise special ability to treat or cure chronic and incurable diseases is too indefinite and uncertain for enforcement."

The board electing to stand on its demurrer and refusing to further plead, a decree was entered enjoining it and the members thereof from in any way interfering with the right of the plaintiff to practice medicine because of the advertisement charged in the complaint made against him.

To reverse that decree, this appeal is prosecuted.

*Hal L. Norwood,* Attorney General, for appellant; *Coleman & Lewis* of counsel.

The statute is a proper exercise of police power. 77 Ark. 506; 66 Kan. 710; 1 L. R. A. (N. S.) 811; 129 U. S. 114; 170 *Id.* 189; 119 N. W. 644; 41 L. R. A. 212. The act is sufficiently definite and certain. 54 L. R. A. 415; 125 Ill. 289; 110 Ill. 180; 4 B. & S. 582; L. R. 23 Q. B. Div. 400; 103 Mo. 22; 32 Minn. 391; *Id.* 227; 195 Mo. 551; 22 R. I. 538. The act does not deprive appellee of his rights without due process of law. 1 L. R. A. (N. S.) 811; 54 L. R. A. 415.

*B. D. Brickhouse, Jr.,* and *W. T. Tucker,* for appellee.

The Legislature has no right to invest the board with judicial power, or to create a court not authorized by the Constitution.

Art. 4, § § 1 and 2, Const. 1874; *Id.* art. 7, § 1; 12 Pet. 718; 3 Ark. 299; *Id.* 352; 7 Ark. 400; 165 Ill. 538; 99 U. S. 761; 73 N. Y. S. 306; 77 Ala. 422; Petitioner's right to practice medicine is a property right. 2 Ala. 31; 7 How. (Miss.) 127; 22 N. Y. 67; 1 Mo. 772; 4 Wall. 333; 54 L. R. A. 838; 90 Pa. 477; 95 Pa. 220. And cannot be taken from him without the judgment of a court of competent jurisdiction. 24 Ark. 162; 10 Ark. 156; 4 Wall. 333; *Id.* 277; 63 S. W. 787. The language of the act is not sufficiently definite and certain. 45 Ark. 381; 63 S. W. 787; 77 Cal. 165; 148 Cal. 590; 25 D. C. App. Cas. 444.

Hart, J., (after stating the facts). · The constutionality of the above quoted statute is attacked by appellee. He contends that his license to practice medicine is a property right, the revocation of which is an exercise of judicial power, which can not be vested in any adminstrative board, but only in the courts; and that to assume to invest this power in the board is to deprive him of his property without due process of law in violation of sec. 8 of art. 2 of our Constitution.

· In discussing this question, the Supreme Court of the State of Minnesota, in a clear and well considered opinion delivered by Mr. Justice Mitchell, said: "The radical fallacy in this chain of argument is the assumption that the revocation of such a license is the exercise of judicial power. 'Due process of law,' or the law of the land" (which means the same thing) is not necessarily judicial proceedings. Private rights and the enjoyment of property may be interfered with by the legislative or executive as well as the judicial department of government. When it is declared that a person shall not be deprived of his property without 'due process of law,' it means such an exercise of the powers of government as the settled maxims of law permit and sanction, under such safeguards as these maxims prescribe for the class of cases to which the one in question belongs. * * *

"It has never been held that the granting or refusing to grant such a license as this was the exercise of judicial power; * * * and there is no possible distinction in this respect between refusing to grant a license and revoking one already granted. Both acts are an exercise of the police power. The power exercised and the object of its exercise are in each case identical, viz., to exclude an incompetent or unworthy person

from this employment. Therefore the same body which may be vested with the power to grant, or refuse to grant, a license may also be vested with the power to revoke. The statutes of all the States are full of enactments giving the power to revoke licenses of dealers, innkeepers, hackmen, draymen, pawn brokers, auctioneers, pilots, engineers, and the like, to the same bodies, boards, or officers who are authorized to issue them, such as city councils, county commissioners, selectmen, boards of health, boards of excise, etc. The constitutionality of such laws, as a valid exercise of the police power, has often been sustained, and indeed rarely questioned.

"The only authorities cited by relator to support his contention are cases in which it has been held that the removal of an attorney by a court from his office as an attorney of the court, *like the order of his admission,* is the exercise of judicial power, and is a judgment of the court. But these cases are not at all analogous to the one at bar. They rest expressly upon the ground that attorneys are *officers of the court,* whose duties relate almost exclusively to proceedings of a judicial nature, and at common law it vested exclusively with a court to determine who is qualified to become one of its officers, and for what cause he ought to be removed, and hence that attorneys could only be removed from office for misconduct ascertained and declared by judgment of the court. Ex parte *Garland,* 4 Wall. 333." *State v. State Board of Medical Examiners,* 34 Minn. 387. This is a leading case on the subject, and has been cited with approval by nearly all the courts where the question has been under consideration. In the case of *Meffert* v. *State Board of Medical Registration and Examination,* 66 Kan. 710, which was affirmed by the United States Supreme Court without discussion (195 U. S. 625), all the authorities bearing on the question were reviewed, and the quotation we have made from the Chapman case was discussed and approved in its entirety. The Meffert case is also reported in 1 L. R. A. (N. S.) 811, and contains an excellent case note. To the same effect see *Dent* v. *West Va.,* 129 U. S. 114; *Hawker* v. *New York,* 170 U. S. 189; *State* v. *Schmidt,* 119 N. W. (Wis.) 647; *State* v. *Webster,* 41 L. R. A. (Ind.) 212, and cases cited.

Our own court, in a carefully prepared opinion by Mr. Justice RIDDICK, has held: (quoting from syllabus) "Acts 1903, p. 342, forbidding physicians and surgeons engaged in the practice of medicine to solicit patients by paid agents, is a valid exercise of the State's police power in regulating the practice of medicine and surgery." *Thompson* v. *Van Lear,* 77 Ark. 506.

As stated in the case of *Commonwealth* v. *Porn* (196 Mass. 326), 13 A. & E. Ann. Cases, 569, "the maintenance of a high standard of professional qualifications for physicians is of vital concern to the public health, and reasonable regulations to this end do not contravene any provision of the State or Federal Constitution.

It is also contended that subdivision (d) of the section of the statute in question is too vague and indefinite to be upheld and enforced; and to our minds this is the most difficult question in the case to determine. It has given us the gravest concern, and, after due consideration, we have decided to uphold it.

Our attention has not been called to any case where a statute of similar import has become the subject of judicial determination.

Counsel for appellee rely upon cases where statutes authorizing the Board of Medical Examiners to revoke the certificate of a physician for making "grossly improbable statements" or for "unprofessional or dishonorable conduct" have been held void as being unreasonable, too uncertain and indefinite. *Hewitt* v. *State Board of Medical Examiners,* 148 Cal. 590, 7 Am. & Eng. Ann. Cases, 750; *Matthews* v. *Murphy,* 63 S. W. 785, 23 Ky. L. Rep. 750; *Czarra* v. *Board of Medical Supervisors,* 25 Dist. of Columbia App. Cas. 443.

On the other hand, there are cases upholding statutes empowering boards to revoke the licenses of physicians who are guilty of unprofessional and dishonorable conduct, and the licenses have been revoked or not, according to the proof made. *State* v. *Board of Medical Examiners,* 34 Minn. 391; *Macomber* v. *State Board of Health,* 28 R. I. 3. And the case note to *Hewitt* v. *State Board of Medical Examiners,* 7 A. & E. Ann. Cases, 750, indicates that the weight of authority is to this effect. But we need not decide that question; for we hold that the language of subdivision (d) in question is not too uncertain and indefinite to be upheld and enforced.

In the case of *Thompson* v. *Van Lear, supra,* this court held that an act forbidding physicians and surgeons to solicit patients by paid agents was a valid exercise of the police power. For like reason, a statute forbidding a physician to advertise for patients in newspapers would be upheld; and, by analogy, a statute forbidding them to advertise their ability to treat and cure certain named diseases would be a valid exercise of the police power.

While the particular disease against which the prohibition of the statute is directed is not named, as was the case of *Kennedy* v. *State Board of Registration in Medicine,* 145 Mich. 241, 9 A. & E. Ann. Cas. 125, yet the words "chronic and incurable," when used with reference to diseases of the body, are not variable, but have a settled and generally accepted meaning. The word "chronic" is the antithesis of acute, and a "chronic and incurable" disease is generally understood to be one of long standing, deep-rooted, obstinate, persistent and unyielding to treatment. On this account those afflicted with such diseases become discouraged, and to an extent desperate, and more easily become the prey of conscienceless and unscrupulous practitioners in the medical profession. Such diseases are specifically named and discussed in standard medical works, and are known to all physicians, who may possess a sufficient knowledge of their profession to practice the art of healing, as chronic and incurable diseases. For the board to consult these standard medical works would not be to use them as evidence, as contended by appellee, but such act would be rather done as an aid to the memory and understanding of the members of the board. See *State* v. *Wilhite,* 132 Iowa 226, 11 A. & E. Ann. Cas. 180 and case note.

The decree will be reversed, and the complaint dismissed for want of equity.