### GREEN *v.* BLANCHARD.

### Opinion delivered March 24, 1919.

1.  DENTISTS—REVOCATION OF LICENSE.—While it is competent for the Legislature to declare for what acts or conduct a license to practice dentistry may be revoked, and to vest in a board the authority to try charges made under such a statute, the statute should specifically designate the offenses which shall constitute causes for revocation.

2.  SAME—REVOCATION OF LICENSE—STATUTE.—Acts 1915, p. 178, creating the State Board of Dental Examiners, and empowering the board to license and revoke licenses of dentists, in section 7, subdivision 2 and 3, provides that the board may refuse or revoke license for publication or circulation of any fraudulent or misleading statement as to skill or method of operator or for advertising with a view of deceiving or defrauding the public. *Held* too uncertain and indefinite for enforcement, though the remainder of the section is valid.

3.  DENTISTS—REVOCATION OF LICENSE—ADVERTISEMENT.—A dentist who advertised that he had absolutely minimized pain from dental work was not liable to have his license revoked as for having advertised to practice dentistry without causing pain, in violation of Acts 1915, p. 184, section 7, subdivision 3.

4.  SAME—REVOKING LICENSE—"ADVERTISE."—The giving of receipts to customers with the words "Painless Dentists" on them by a dentist after work had been done for such customers did not constitute an advertisement, in violation of the above statute.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

This is a proceeding by certiorari in the circuit court to set aside an order of the Board of Dental Examiners of this State revoking the certificate of Dr. F. A. Blanchard authorizing him to practice dentistry.

The proceeding brings into question an act of the Legislature passed in 1915 regulating the practice of dentistry and dental surgery in this State. Acts of 1915, p. 178. The power to grant licenses to applicants to practice dentistry in this State and various other powers are conferred upon the State board by the act. Among others, the power to revoke the certificate is conferred by section 7 of the act.

On the 27th day of February, 1918, the Arkansas State Board of Dental Examiners issued a citation to Dr. F. A. Blanchard to appear before it on the 9th day of April, 1918, at the Senate chamber in the State Capitol in the city of Little Rock and there to show cause, if any there be, why the license heretofore issued to him by said board should not be revoked under the provisions of sections 7 and 8 of the act.

After hearing the testimony introduced, the board found Dr. Blanchard guilty of violation of the provisions of the act above referred to and entered an order revoking his license. At the request of Dr. Blanchard the findings of the board were stated by its president as follows: "The painless dentist; sixteen years' written guarantees were not given—the experts—wholesale cost did not enter into the transaction."

The facts are as follows: In February, 1918, and for several months prior thereto, Dr. F. A. Blanchard was practicing dentistry in the city of Little Rock and employed several assistants in his office. He advertised his business in the daily papers and an advertisement in his name dated March 10, 1918, contained the following: "Blanchard's Dentists are Specialists. Each Thoroughly Efficient in His Own Line. Dental work is divided into parts at Blanchard's. If a tooth is to be pulled, you are attended by an expert extractor who understands this thor-

oughly. If a crown is to be made, an expert laboratory man does this, and so on. You are thus assured of the work as good as the best.''

Another advertisement contained the following:

''Dental specialists, who attend you here. Each a specialist in his line, thus giving you the greatest dental skill.

''Dr. F. A. Blanchard, sixteen years' continuous practical experience.

''Dr. C. N. Cantrell, thoroughly efficient in all dental work.

''Dr. M. E. Ludwick, expert crown and bridge workman.

''Dr. W. D. Flack, expert extractor and bridge workman.

''Dr. F. L. Merck, chief of laboratory.''

''Sixteen years' written guarantee given to every patient.''

''These dentists are past masters in their respective lines, busily at work practicing the latest science of dentistry in office without a superior in all America, as far as modern equipment is concerned. Offices fitted with all modern mechanical and other devices, perfected to add to the pleasure and comfort of all patients.''

Still another is as follows:

''Highest efficiency. The gentlemen operators and mechanical dentists in my office are time-tried and proven men of highest efficiency, otherwise they would have no place in my office. The work they do for you will be done thoroughly and conscientiously and will be backed by my guarantee, which I do not fail to make good. It is my honest opinion that we give more and better work for the money than any dental parlor or parlors in the United States. Our supplies of all kinds are purchased in great quantities at lowest wholesale cost, a fact that redounds to the advantage of our patients and makes possible our present scale of low prices.''

There was also evidence on the part of the board tending to show that neither Dr. Blanchard nor his assistants were experts or specialists in dentistry.

A young man seventeen years old testified for the board that he worked for Dr. Blanchard from the 4th to the 9th day of March, 1918. He worked in the laboratory on plates for false teeth and stated that he was the only laboratory man Dr. Blanchard had that week. On cross-examination he admitted that he did not make any crowns or attempt to make any. His only work was working on plates for false teeth, polishing them, etc. He also admitted that there were two operators who did the most difficult part of the laboratory work. He testified that there were three assistants in the office who did the crown work while he was there.

Several of the advertisements of Dr. Blanchard contained the following: ''I have absolutely minimized pain from dental work.''

It was also shown that Dr. Blanchard issued receipts to his patients upon which were the printed words, ''painless dentists.'' These receipts also had printed on them the words, ''United Dental Company.'' The printed words were marked out with a stamp.

According to the testimony of Dr. Blanchard, these were some old receipts which he had when he was practicing in New Orleans, Louisiana. He was delayed in getting receipts which he had ordered for his office here and only used these receipts until he could get others. He plainly marked out with a stamp the words, ''painless dentist'' and ''United Dental Company.'' The receipts were not used to advertise his business at all. On the back of the receipts used by Dr. Blanchard here are the following words: ''We do good work cheap and for cash. If any work is defective, kindly call our attention to it, and we will gladly make it good without extra charge. All complaints must be made to Dr. Blanchard, and if fault is found in the work, will gladly repair same for you without argument. ''Dr. F. A. Blanchard,

''By Flack.''

It is also shown that the assistants employed by Dr. Blanchard were experts and specialists as advertised by him. One witness testified that Dr. Blanchard repaired a plate for her and that she had three teeth extracted at his office absolutely without pain; that she did not know what anesthetic was applied; that she had had work done by other dentists and that they hurt her much more; that the work that was done for her in Dr. Blanchard's office was very satisfactory.

Upon the hearing of the writ of certiorari in the circuit court, judgment was rendered setting aside the order of the board revoking the license of Dr. Blanchard.

From the judgment rendered the board has duly appealed to this court.

*House, Rector & House,* for appellants.

1. There was ample evidence of a substantial character to justify the findings of the board and it was error to set aside the order revoking appellee's license. 126 Ark. 125. The decision of a board upon a question of fact is final if made in good faith. 1 L. R. A. (N. S.) 811; 17 *Id.* 439; 43 *Id.* 911. The courts will not disturb the findings of a board if there is substantial evidence to sustain its findings. Cases *supra.* All presumptions are in favor of its findings.

2. The law had been violated by appellee by the publication and circulation of fraudulent and misleading statements in his advertisements as to skill and methods. Act 56, Acts 1915, § § 7-13. He advertised *painless dentistry.*

3. He falsely advertised also as to giving written 16-year guarantee to each patient and that he had trained experts, specialists, and as to wholesale cost of supplies. 65 Atl. 263; 28 R. I. 3; 161 S. W. 1169; 51 L. R. A. (N. S.) 958; 162 *Id.* 796; 157 Ky. 123; 116 N. W. 528; 119 *Id.* 17; 135 S. W. 631; 129 Pac. 1128; 180 S. W. 538; 154 Pac. 56; 158 *Id.* 982; 43 L. R. A. (N. S.) 911; 142 Pac. 505.

The action of the board was done in good faith and upon sufficient evidence under the act. The writ should

have been dismissed and the judgment should be reversed and the findings of the board sustained.

*Mehaffy, Reid, Donham & Mehaffy* and *J. A. Tellier,* for appellee.

1. The board exceeded its jurisdiction. The action of the board in refusing to make the charges more specific, definite and certain was arbitrary and unwarranted and deprived appellee of a fair and just trial. He was convicted on charges that were not made. 128 Ark. 239; 157 Ky. Rep. 129.

2. The evidence before the board furnished no substantial basis for revoking his license. No charges against Dr. Blanchard's character were made. It is only claimed that he violated that portion of the act relating to advertising. Act 56, Acts 1915. But the findings of the board are not sustained by any substantial evidence.

3. Certiorari is the proper remedy. Kirby's Digest, sections 1315-16; 126 Ark. 125, 135-6. The evidence was not legally sufficient. 1 Jones on Ev. 906; 97 Ark. 442; 57 *Id.* 461-468; 7 Words and Phrases 6762; 22 S. E. 142-3; 94 Ga. 804.

4. Appellee did not advertise to practice dentistry without pain but only to absolutely ''minimize pain'' and there was no violation of the act. The receipts were not advertisements to induce public patronage. His advertisements as to experts and specialists did not violate the act. As to definition of experts, see 3 Words and Phrases, p. 2594-5-6; 71 N. Y. 453, 460; 82 N. Y. Supp. 1064-7; 84 App. Div. 628; 65 Pac. 595-6; 39 Ore. 26; 62 L. R. A. 543; 21 S. W. 737-8; 114 Mo. 335; 90 N. W. 10, 11; 24 Pac. 506; 5 R. I. 243. ''Specialist,'' see 7 Words and Phrases 6596; 64 N. E. 38; 29 Ind. App. 456.

See also 116 N. W. 528; 119 *Id.* 17; 135 S. W. 631; 129 Pac. 1128; 43 L. R. A. (N. S.) 911; 151 Pac. 56; 158 *Id.* 983-4.

5. The statute is unreasonable and too uncertain and indefinite. It is penal also in its nature. 7 A. & E. Ann. Cases 750; 63 S. W. 785; 253 Mo. 284-5.

6. No one was deceived or defrauded. Cases *supra;* 28 R. I. 3-4-5, etc.

HART, J., (after stating the facts). The constitutionality of statutes creating State Medical and Dental Boards and empowering them to license and revoke licenses of physicians and dentists have generally been upheld. This court upheld such a statute in the case of *State Medical Board of the Arkansas Medical Society* v. *McCrary,* 95 Ark. 511. The appeal, however, does involve the construction of that part of the act regulating the practice of dentistry relating to the revoking of licenses by the board. See Acts of 1915, p. 178. The sections referred to are sections 7 and 13. They read as follows: ''Section 7. The State Board of Dental Examiners may refuse license or suspend or revoke the same for any of the following reasons: *  *  *

*''Second.* The publication or the circulation of any fraudulent or misleading statement as to the skill or method of any person or operator.

*''Third.* The commission of a criminal operation or conviction of felony, or chronic or persistent inebriety, drunkenness or confirmed drug habit, or in any way advertising to practice dentistry or dental surgery without causing pain or advertising in any other manner with the view of deceiving or defrauding the public or in any way that would tend to deceive the public, or using or advertising as using any drug, nostrum, patent or proprietary medicine of any unknown formula, or any dangerous or unknown anesthetic which is not generally used by the dental profession, or using or advertising as using any drugs, material, medicine, formula, system or anesthetic which is either falsely advertised, misnamed, or not in reality used.''

*    *    *    *    *    *    *    *    *    *    *

''Section 13. It shall be unlawful for any person or persons to practice or offer to practice dentistry or dental surgery under any name except his or her own name, or to use the name of company, association, corporation, or

business name, or to operate, manage, or be employed in any room or rooms or office where dental work is done or contracted for under the name of any company, association, trade name or corporation. Any person or persons practicing or offering to practice dentistry or dental surgery shall practice under and use his or her name only.''

Section 17 provides that any person who shall practice or attempt to practice dentistry or dental surgery during the period of revocation of his license shall be guilty of a misdemeanor and upon conviction shall be fined not less than fifty dollars nor more than two hundred dollars or shall be imprisoned in the county jail not less than one month nor more than one year; or shall be punished by both such fine and imprisonment.

The board relied upon the power given it by that part of section 7 contained in section 2 and the following in section 3, ''or advertising in any other manner with the view of deceiving or defrauding the public, or any way that would tend to deceive the public'' in making the order revoking the license of appellee.

On the part of appellant board it is contended that subdivision 2 and the words ''deceiving or defrauding the public'' include the acts proved by the board to have been done by appellee as set out in our statement of facts. Counsel say that it was impossible for the Legislature to enumerate all the acts which these words embraced and that they include all the acts proved by the board in this case and that their meaning would be so considered by the common judgment of mankind. Cases are cited by them to sustain their contention.

On the other hand the judgment of the circuit court annulling the order of the board revoking appellee's license is sought to be upheld on the ground that subdivision 2 and that part of subdivision 3 of section 7 just referred to are so vague and indefinite as to make the statute inoperative and invalid for that reason. Cases are cited by them to sustain their contention. This court has never been called upon to contrue these words or words of similar import in a statute of this sort. In the

case of *State Medical Board of Arkansas Medical Society
v. McCrary,* 95 Ark. 511, the court was called on to con-
strue our statute empowering State Medical Boards to re-
voke the license of one who publicly advertises ''special
ability to treat or cure chronic and incurable diseases.''
The contention was there made that the statute was too
vague and indefinite to be enforced. The court said that
the question gave it the gravest concern but upheld the
statute on the ground that ''chronic and incurable dis-
eases'' are specifically named and discussed in stand-
ard medical works and are so known to all phy-
sicians who are qualified to practice their profession.
Cases on both sides of the question are cited in the
opinion. Additional cases are cited in *State ex rel.
Spriggs* v. *Robinson et al., State Board of Health,*
161 S. W. 1169, a case decided by the Supreme Court of
Missouri. Here the language of the statute is essentially
different from that construed in the McCrary case. It
does not advise the dentist in advance of what act or acts
may be in violation of its provisions. Subdivision 2 and
the words, ''deceiving or defrauding the public'' have no
common law definition. They are not defined in the stat-
ute and have no generally well-defined meaning in the
decision of courts. Under the statute, a dentist might do
an act neither violating moral law nor involving moral
turpitude and which he regarded as strictly proper and,
still his acts might, in the opinion of the board, be such
as were calculated to deceive or defraud the public. Dif-
ferent standards might be established by different
boards. It is well known that the different schools of
medicine and even of dentistry have widely divergent
views as to the treatment of certain diseases. It must be
remembered that the statute does not prohibit advertis-
ing, however unprofessional and unethical we might con-
sider that to be. It only prohibits advertising with the
view of ''deceiving or defrauding the public or in any
way that would tend to deceive the public.'' So the mem-
bers of one school of medicine or dentistry might advo-
cate a certain treatment and in good faith advertise it

to the public which might be condemned by members of another school as calculated to deceive and defraud the public. The members of the profession are usually men of intelligence and good citizens. We do not believe that they would be guilty of such a multiplicity of wrongful acts that their conduct could not be safely regulated by a specific legislative enactment.

It is competent for the Legislature to declare for what acts or conduct a license may be revoked and to vest in State boards the authority to investigate and try the charges which may be made under such a statute, but the statute should specifically name or designate the offenses or wrongful acts which shall constitute a cause for revoking his license so that the dentist may know in advance whether he has violated the terms of the statute. We think this construction is in accord with the principles of law heretofore laid down by this court.

In *Ex Parte Jackson,* 45 Ark. 158, the court annulled a statute which made it a misdemeanor to "commit any act injurious to the public health, or public morals, or the perversion or obstruction of public justice, or to the due administration of the laws." In construing the statute the court said: "We cannot conceive how a crime can, on any sound principle, be defined in so vague a fashion. Criminality depends, under it, upon the moral idiosyncrasies of the individuals who compose the court and jury. The standard of crime would be ever varying, and the courts would constantly be appealed to as the instruments of moral reform, changing with all fluctuations of moral sentiment. The law is simply null. The Constitution, which forbids *ex post facto* laws, could not tolerate a law which would make an act a crime, or not, according to the moral sentiment which might happen to prevail with the judge and jury after the act had been committed."

So, too, in discussing the principle in *United States* v. *Reese et al.,* 92 U. S. 214, the court held the statute too vague and indefinite for enforcement and in discussing the question said: "Penal statutes ought not to be

expressed in language so uncertain. If the Legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime." Continuing, the court said: "It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government."

But it is insisted that because this is not a case of prosecution for crime that the doctrine of those cases has no application. This very question came before the court in *Czarra* v. *Board of Medical Supervisors of the District of Columbia,* 25 Appeal Cases (D. C.) 443, in which the court held that the doctrine was applicable and cited with approval the cases just referred to.

Shepard, C. J., speaking for the court, said: "The police power of every State warrants the requirement of the possession of all reasonable qualifications by those who seek to engage in the public practice of medicine, and, incidentally, the extension of a wide discretion to those agencies charged with the duty of inquiry and determination: But we do not agree that the exercise of the same wide discretion can be extended to a case where, when one has been regularly admitted, the deprivation or forfeiture of his license is sought under another or an independent provision of the same statute. The right to practice the profession, once regularly obtained by compliance with the law, becomes a valuable privilege or right in the nature of property, and is safeguarded by the principles that apply in the protection of property lawfully acquired. And these are of the same general nature, though not in all particulars, as those which safeguard him when prosecuted for the commission of a minor offense."

As said in that case while the proceeding to revoke the license is not itself a criminal proceeding, it is a preliminary step thereto. The statute provides a severe penalty for practicing dentistry after the revocation of the license and in the prosecution therefor the order of revocation must necessarily be held to be conclusive evidence of the fact of the revocation of the license. It is a fact worthy of note that the case of *Ex Parte Jackson, supra,* has been cited in all cases of this character where the statute was held too indefinite and uncertain for enforcement.

It is also a fact worthy of note that in most of the cases which have upheld statutes as general as the one under consideration, the question now under discussion was not raised, discussed or decided. The question discussed in each case was the constitutionality of such statutes and that is noticeably so in the cases cited by this court in *State Medical Board of Arkansas Medical Society* v. *McCrary,* 95 Ark. 511. The principle under discussion is well stated in the case of *Czarra* v. *Board of Medical Supervisors, supra.* There the question was whether "unprofessional or dishonorable conduct" as declared in the act were sufficiently specific and certain as to warrant the exercise of the power of revocation of the license by the Board of Medical Supervisors. The court held "that unprofessional or dishonorable conduct" was not defined by the common law and that the words have no common or generally accepted signification, and that what conduct may be of either kind is a matter of opinion only. Chief Justice Shepard, speaking for the court in discussing this phase of the case says: "Doubtless all intelligent and fair-minded persons would agree in the opinion of the Board of Medical Supervisors that the act charged against the appellant in the case at bar amounted to conduct both unprofessional and dishonorable. But this is not the test of the validity of the particular clause of the statutes. The underlying question involved in all cases that may arise is whether the courts can uphold and enforce a statute whose broad and indefi-

nite language may apply not only to a particular act about which there would be little or no difference of opinion, but equally to others about which there might be radical differences, thereby devolving upon the tribunals charged with the enforcement of the law the exercise of an arbitrary power of discriminating between the several classes of acts."

The principle was also recognized by the Supreme Court of the United States in *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94.

It follows that subdivision 2 of section 7 and that part of subdivision 3 as follows: "or advertising in any other manner with the view of deceiving or defrauding the public or in any way that would tend to deceive the public" are too uncertain and indefinite for enforcement.

The remaining part of the section, however, is valid and capable of enforcement. This brings us to a consideration of whether or not appellee violated that part of subdivision 3 of section 7 as follows: "or any way advertising to practice dentistry or dental surgery without causing pain." Appellee advertised in the daily papers as follows: "I have absolutely minimized pain from dental work." Does this bring the case within the rule laid down in *Hall* v. *Bledsoe,* 126 Ark. 125. We do not think this language in its common acceptation means that appellee would practice dentistry or dental surgery without causing pain. The word "minimize" as defined by the Century Dictionary means "to reduce to a minimum or the lowest terms or proportions; to make as little or slight as possible." So the word does not indicate that appellee would practice dentistry without causing pain; but that he had reduced it so as to make the pain as little or slight as it was possible to do in the practice of dentistry. The word "absolutely" means positively, and was only a word of emphasis. There is nothing in the record to show that the words were used in any other signification.

It is contended on the part of the board that the use of the receipts with the words, "painless dentists," on

them indicated that appellee was intending to evade the statute. These receipts were given to customers who had paid him for work after it had been done. They were not in any sense used to advertise the business. To advertise means to give public notice.

It follows that the judgment of the circuit court must be affirmed.

McCULLOCH, C. J., (dissenting). It is conceded that the law applicable. to this case, as far as concerns the scope and extent of appellee's remedy on *certiorari*, is settled by the decision of this court in the case of *Hall* v. *Bledsoe,* 126 Ark. 125, which involved a review of the proceedings of the Board of Control in the removal of the superintendent of one of the State charitable institutions. In that case we said:

"We are not called on to decide primarily whether or not the decision of the board was correct. The lawmakers have placed that authority in the Board of Control, and it would be clearly· an encroachment by the courts upon the authority of another department of government to undertake to substitute the judgment of the judges for that of the members of the tribunal vested' with authority to manage the institutions of the State and to appoint and remove those who are placed there in charge. When all the testimony in the case is considered and viewed in the strongest light to which it is susceptible in support of the board's findings, it can not be said that there is an entire absence of evidence of a substantial nature tending to establish the charge of inattention and neglect of duty on the part of the superintendent. This being true, it becomes the duty of the courts, upon well-settled principles of law, to leave undisturbed the action of the tribunal especially created by the lawmakers to pass upon those questions. Any other view would make the Board of Control a mere conduit through which a decision on the removal of an unfaithful or inefficient superintendent would be passed up to the courts instead of leaving the matter where the lawmakers have placed it, in the hands of the board."

I think the position of the majority in condemning certain parts of the statute is untenable and against the great weight of judicial authority. The doctrine of the McCrary case (95 Ark. 511) ought to control the present case. The provision of the statute considered in that case was different from the one in the instant case, but not to the extent that they escape control by the same principles. . In the McCrary case the statute which we upheld made "advertising special ability to treat or cure chronic and incurable diseases" grounds for revoking the license of a physician, and we said that the terms of the statute were not too vague for the reason that it is easily ascertainable from standard medical books what diseases are considered by the profession as "chronic and incurable." Medicine is not an exact science—it is progressive—and a disease considered incurable today may be definitely known tomorrow as being curable. The standard books of today may repudiate accepted theories of yesterday. Yet we declared, rightly, I think, that the statute thus dealt with was not so vague as to render it invalid. Now, under the same principles we ought to declare the same result concerning the statute under present consideration which authorizes the revocation of the license of a dentist who advertises himself by the publiaction of "any fraudulent or misleading statement as to the skill or method of any person or operator." Fraud is many-sided and manifests itself in various forms, yet when brought to light, it is recognizable under whatever form it may assume. Fraud is a fact—not a principle of law—and it does not constitute a delegation of legislative power, to authorize the State Board of Dental Examiners to determine whether or not, in a given instance, a fraudulent or misleading statement has been published. In other words, this delegation of power to the board is not to act in a legislative capacity in declaring what the law on the subject is, but the Legislature itself has declared the law in the statute, and the delegation to the board is merely one to determine the question of fact whether or not the publication in a given instance con-

stituted a fraudulent or misleading one within the meaning of the language of the statute.

No case has come to our attention which deals with a statute containing the precise provision found in the statute now under consideration, but in the McCrary case we expressly recognized the fact that the weight of authority preponderated in favor of the validity of statutes which authorize the revocation of physicians' licenses for "unprofessional or dishonorable conduct." Among the few cases holding to the contrary, the case of *Czarra* v. *Board of Medical Supervisors,* 25 D. C. App. Cas. 443, was referred to as being with the minority, and, strangely enough, that case seems to have controlling influence on this court in the decision of the present case.

The cases constituting the majority are very numerous, and the following are especially in point: *Forman* v. *State Board of Health,* 157 Ky. 123; *Richardson* v. *Simpson,* 88 Kan. 684, 43 L. R. A. (N. S.), 911; *Berry* v. *State,* 135 S. W. (Tex. Civ. App.), 631; *Lassen* v. *Board of Dental Examiners,* 142 Pac. (Wash.), 505; *People* v. *Apfelbaum,* 251 Ill. 18; *State ex rel.* v. *Goodier,* 195 Mo. 551; *State ex rel. State Medical Examining Board,* 32 Minn. 324.

The case of *Matthews* v. *Murphy,* 23 Ky. L. R. 750, 63 S. W. 785, is one of the three cases constituting the minority, but in the later case cited above the court ranged itself with the majority by holding to be valid a statute authorizing the revocation of a physician's license for unprofessional and dishonorable conduct which is fraudulent or involves moral turpitude. The court said that such a provision is not vague, as it "erects a definite standard by which the board is to be governed, to which every member of the learned and honorable profession should conform; and he may know in advance that he should conform to this standard." The Texas case cited above dealt with a statute which authorized revocation for "grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public," and the court decided that the grounds stated were

not so indefinite as to render the statute void. This decision was by one of the Courts of Civil Appeals of that State, but a writ of error to the Supreme Court was denied.

A statute of the State of Washington contains the following as grounds for revoking the license of a physician: "All advertising of medical business which is intended or has the tendency to deceive the public, or impose upon credulous or ignorant persons, and so be harmful or injurious to public morals or safety." The Supreme Court of that State, in the case cited above, upheld the statute, and in the opinion it was said that it was as definite as it could reasonably be made because such an advertisement "as to the limitless variations of language, symbols and verbal or pictorial allurements, no human ingenuity could possibly anticipate and forestall them."

The language of our statute is obviously much more definite than that of many others which declare that the license of a physician may be revoked for "unprofessional or dishonorable conduct;" yet, by the great weight of authority the latter is sufficiently definite to sustain the validity of such a regulation.

I am of the opinion, therefore, that the statute is valid, and that the Board of Dental Examiners had before it substantial evidence that appellee violated the statute with respect to the character of advertisement made grounds for revocation. The evidence tended to show that the advertisement was false on each point set forth in it, and that appellee made the false claims for the purpose of deceiving the public. It is unnecessary for us to determine where the preponderance of the testimony adduced before the board was, for, if there was any evidence at all to sustain the finding of the board, we have no authority under the law to disturb it. *Hall* v. *Bledsoe, supra.*

I am clearly of the opinion, too, that the decision of the board holding that appellee, in advertising that he had "absolutely minimized pain from dental work," violated the terms of the statute. The language of the ad-

vertisement is not precisely that used in the statute, but the effect upon the public mind is the same, and was evidently so intended. The statement was very artfully framed so as to escape the exact language of the statute, and yet convey the same meaning at least to unthinking or credulous persons. The most emphatic words were used in the advertisement. In the first place, though it did not say that pain was eliminated, it said that it was "absolutely minimized * * * from dental work." Even a close analysis of these words leads to the interpretation that it was meant to convey the idea that pain was eliminated, for to "absolutely minimize pain from dental work" is to reduce it to a practical exclusion. But that is certainly true in a popular sense. The words are calculated to carry the same meaning as those used in the statute, and since the board has so decided, we ought not to disturb the findings of that tribunal, which was expressly clothed with power to pass on such questions.

I dissent.

SMITH, J., concurs in the dissent.