Argued June 6; affirmed June 26; rehearing denied
September 11, 1934

# SEMLER *v.* OREGON STATE BOARD OF DENTAL EXAMINERS ET AL.

(34 P. (2d) 311)

*S. J. Bischoff* and *Frank J. Lonergan,* both of Portland, for appellant.

*Lawrence T. Harris,* of Eugene, and *Harry M. Kenin,* of Portland (Harris, Smith & Bryson, of Eugene, and Herzog & Kenin, of Portland, on the brief), for respondents.

BELT, J. Plaintiff, a duly licensed dentist who has practiced his profession in the city of Portland since 1918, seeks to enjoin the threatened action of the State Board of Dental Examiners to revoke or suspend his license for an alleged violation of certain provisions of chapter 166 of the Laws of Oregon for 1933, amending section 68-1013, Oregon Code 1930, relating to the practice of dentistry. The gravamen of plaintiff's complaint is that the following provisions of the act defining unprofessional conduct which constitute ground for revocation or suspension of a license to practice dentistry are unconstitutional and void: "Advertising professional superiority or the performance of professional services in a superior manner; advertising prices for professional services; advertising

by means of large display, glaring light signs, or containing as a part thereof the representation of a tooth, teeth, bridge work or any portion of the human head; employing or making use of advertising solicitors or free publicity agents; or advertising any free dental work or free examination; or advertising to guarantee any dental service, or to perform any dental operation painlessly; * * *." Other grounds specified in the act for revoking or suspending a license are not challenged by plaintiff. He does not question that part of the act relating to advertising which prohibits "making use of any advertising statements of a character tending to deceive or mislead the public".

It appears from the complaint that while plaintiff was engaged in the practice of dentistry he (1) employed the services of advertising solicitors; (2) used as advertising mediums large display signs and glaring light signs showing illustrations of a tooth, teeth and bridge work; and (3) advertised in the daily newspapers as follows: (a) That he had acquired superior skill and ability and knowledge in the practice of dentistry and his ability to perform the professional services of dentistry in a superior manner; (b) the prices that he would charge for various services to be rendered; (c) that he makes examinations for prospective patients without making any charge therefor; (d) that he guarantees all dental work performed by him; and (e) that dental operations are performed painlessly.

Plaintiff alleges in substance that by reason of the methods of advertising above mentioned he has acquired a large and lucrative practice; that he and his employed assistants—who are licensed practitioners and working under his supervision—have treated daily at his offices approximately 150 patients; and that on account of such volume of business he has been en-

abled to render service to his patients at a much lower price than charged by most practitioners. Plaintiff also alleges that all of his advertisements were made in good faith and honestly express his "intention of carrying out each and every of the representations contained therein". It is also averred that if the above statutory provisions are enforced the plaintiff will sustain irreparable loss and injury.

Plaintiff alleges as conclusions of law that the above portion of chapter 166, Laws of Oregon for 1933, is unconstitutional and void because it (1) deprives him of property without due process of law; (2) impairs the obligation of contracts; (3) constitutes class legislation; (4) is so indefinite and uncertain as to be incapable of enforcement; and (5) denies to him equal protection of the law.

A general demurrer to the complaint was sustained and, upon refusal of the plaintiff further to plead, the suit was dismissed. The plaintiff appeals.

The history of legislation in the various states regulating the conduct of practitioners in the learned professions—law, medicine, and dentistry—discloses a marked tendency in recent years to enact more stringent regulations, that the standards of these professions be raised and the ignorant, gullible members of the public be protected from quacks and charlatans who spurn the ethics of their profession and thrive by flamboyant methods of advertising and "high powered salesmanship". Six states, viz, California, Illinois, Michigan, South Dakota, Utah, and Wisconsin, have statutes similar to that of this state prohibiting dentists from employing "cappers" or "steerers" to obtain business. Thirty-two states of the Union make it unprofessional conduct for a dentist to make any advertising statement of a character to deceive or mislead the public. Arkansas, Delaware, Illinois, Mary-

land, Minnesota, New York, Ohio, and Wisconsin, have similar statutes to that of Oregon prohibiting "advertising professional superiority or the performance of professional services in a superior manner". Five states, viz, Delaware, Illinois, Maryland, New York, and Wisconsin, have statutes making it unprofessional conduct for a dentist to advertise prices for professional services. Delaware, Illinois, New York, and Wisconsin have similar statutes regulating the practice of dentistry and providing against "advertising by means of a large display, glaring light signs, or containing as a part thereof the representation of a tooth, teeth, bridge work or any portion of the human head". Delaware, Illinois, Maryland, and New York prohibit a dentist from "employing or making use of advertising solicitors or free publicity press agents". Illinois provides against advertising "free dental services or examinations as an inducement to secure dental patronage". There are ten states which prohibit advertising "to perform any dental operation painlessly". We are not unmindful that the statutory enactments of other states governing professional conduct of dentists have no direct bearing upon the legal questions involved herein, but such legislation—which in most instances is an adoption of the rules of ethics of the American Dental Association—is at least illuminating relative to the trend of legislation to protect the public against fraud and deception.

The legislature, in enacting these drastic regulations, was not dealing with a trade or business but with a profession whose members deal with the public under an intimate and confidential relationship. The patient ordinarily has implicit confidence in his dentist. He knows not the intricacies of the treatment nor the reasonable value thereof. He submits to treatment with an abiding faith that his dentist is effi-

cient and will deal honorably with him. Hence, cases involving the regulation of a trade or business—in which every person has a right to engage—have slight analogy to the one under consideration.

■ The plaintiff has been privileged to practice his profession by virtue of a license granted by the state, and, in order to obtain the same, it was necessary for him to conform to certain rules and regulations enacted for the protection of the public. That, after the issuance of the license, the state, in the exercise of its police power, may also prescribe reasonable rules and regulations governing the subsequent conduct of the licensee, naturally follows. It would likewise seem well founded in law that one who aspires to treat human ailments and thereby invite the confidence of the public to an exceptional degree should be compelled to submit to such regulations as will guard the public as far as possible against fraud and deception. In other words, the extent to which the police power may be exercised depends largely upon the manner and degree in which the public welfare is involved. We conclude then that, while the right of the plaintiff to practice his profession is a valuable one and is in the nature of a property right of which he cannot be arbitrarily deprived, it is, nevertheless, a privilege subordinate to the duty of the state to enact reasonable laws to protect the public health and safety.

Courts, with good reason, have refused to define police power for to do so might thus limit it to the detriment of the public welfare, in the light of changing social and economic conditions. The law should follow closely in the wake of an advancing civilization. Regulation of professional conduct deemed unduly drastic ten years ago might well be considered reasonable under present-day conditions. As well said by that eminent jurist, Mr. Justice Field, speaking for

the United States Supreme Court in *Dent v. West Virginia*, 129 U. S. 114 (32 L. Ed. 623, 9 S. Ct. 231):

"The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud."

██ In the enactment of the legislation above set forth, providing for the revocation or suspension of a license to practice dentistry, did the legislature go beyond the proper exercise of the police power? Is there any reasonable relation between the questioned prohibitory provisions of chapter 166, Laws 1933, and the object or purpose which the legislature had in mind, viz, the protection of the public against fraud and deception in the practice of dentistry? Certainly the need of such legislation rests primarily upon the judgment of the legislature. It is only when a legislative act clearly appears arbitrary, capricious, and without reasonable relation to the object sought to be attained that courts will interfere. The presumption is in favor of the validity of the act and that the legislature in enacting the same did so with the view of promoting the public welfare: *People v. Griswold*, 213 N. Y. 92 (106 N. E. 929, L. R. A. 1915D, 538).

█ Counsel for appellant concede that the state, in the exercise of the police power, has the right to enact legislation to prevent fraud and deception in the practice of dentistry, but assert that these provisions of the act to which attention has been directed do not have such tendency and are an arbitrary interference with his right to practice his profession. It may be that the appellant acted in good faith and that the representations made in his advertisements express the truth, but such is beside the question. The more

pertinent query is: Does the kind of advertising prohibited afford the unscrupulous practitioner a means of perpetrating fraud and deception upon his patients? In itself, there is nothing harmful in merely advertising prices for dental work, or in displaying glaring signs illustrating teeth and bridge work, but who will doubt that practitioners not willing to abide by the ethics of their profession often resort to such advertising methods to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them. The act does not prohibit all advertising by dentists, but bars only certain specified kinds of advertising as being inimical to the public welfare. The legislature in the passage of the 1933 amendment, which strengthened and amplified prior statutory regulations, relative to the practice of dentistry, undoubtedly was aware of existing conditions and believed the evils resulting from such advertising methods justified further protection to the public. We are unable to say that there was no real or substantial basis for this legislative conclusion. The burden to show to the contrary rests upon the party challenging the validity of the act.

██ It is well settled that the legislature may enact laws which tend to prevent the perpetration of fraud although the act prohibited is harmless in itself: *Kirk v. State,* 126 Tenn. 7 (150 S. W. 83, Ann. Cas. 1913D, 1239). The police power is not limited to the prohibition of acts which are malum in se. If the rule were otherwise, the public could never be adequately protected against the evil effects of that large category of acts which, under certain conditions, offer special opportunity to perpetrate fraud and deception. As stated by Freund in his splendid text on Police Power, section 272, "The police power undertakes to give an

ampler protection, both by adopting precautionary measures and by forbidding certain practices irrespective of an actual intent to defraud.''

There is a species of ''bait advertising'' which, while not fraudulent per se, nevertheless is used by unscrupulous practitioners to lure the unsuspecting public. Such high pressure advertising generally consists of half-truths. Inducing patronage by representations of ''painless dentistry'', ''professional superiority'', ''free examinations'', and ''guaranteed'' dental work is, as a general rule, the practice of the charlatan and the quack to entice the public. Those who have had experience in the extraction and restoration of teeth know full well that ''painless'' dentistry is a delusion and a snare. Can it reasonably be contended that regulation of such flamboyant and high-pressure methods of advertising is beyond the realm of the police power?

In *People v. Girard,* 145 N. Y. 105 (39 N. E. 823, 45 Am. St. Rep. 595), the court sustained the validity of a statute which prohibited the manufacture or keeping for sale any vinegar containing artificial coloring matter even though not harmful to health and the vinegar so colored was equal to the best vinegar of the class which it was colored to represent. The coloring matter, however, was considered as a means of causing a consumer to believe that he was purchasing cider vinegar. Hence, the legislation was deemed a proper exercise of the police power.

The constitutionality of the Bulk Sales Law was involved in *Coach v. Gage,* 70 Or. 183 (138 P. 847), and the court, in sustaining the act, said:

''Now, the purchase of a stock of goods in bulk is in itself an innocent act; but, for the reason that persons carrying on the business of dealing in merchan-

dise more frequently than otherwise purchase a part of their stock on credit and often from dealers residing at a distance, and because it has become a matter of common knowledge that transfers of stocks of goods in bulk with intent to defraud creditors are a frequent form of swindling, the legislatures of a majority of the states, in the exercise of their police powers, have enacted laws to safeguard such transfers, * * *.''

To the same effect see *Lemieux v. Young,* 211 U. S. 489 (53 L. Ed. 295, 29 S. Ct. 174).

While courts are not in accord concerning the validity of statutory regulations similar to those under consideration, in our opinion they have been sustained by the weight of authority and the better reasoned cases. *Laughney v. Maybury,* 145 Wash. 146 (259 P. 17, 54 A. L. R. 393), is in keeping with our views and strongly supports the constitutionality of the act. In that case the validity of a statutory provision (subd. 4 of section 10063 of Remington's Revised Statutes of Washington) was upheld prohibiting osteopathic physicians and surgeons from ''all advertising of any kind or character other than the carrying of a professional card, window, or street sign''. Appellant asserts that this case is not good law and that it is not consistent with the two earlier cases of *State Board v. Macy,* 92 Wash. 614 (159 P. 801), and *State Board v. Jordan,* 92 Wash. 234 (158 P. 982). We cannot agree with this contention. The statute under consideration in the Macy case was entirely different from the one involved in *Laughney v. Maybury,* supra. The objection to it was based upon its alleged uncertainty and vagueness and no question was raised concerning whether the legislation was a proper exercise of the police power. The same distinction applies to the Jordan case. Neither of these decisions indicates that a law

prohibiting or regulating advertising, and not specifically mentioning deceit, misrepresentation or injury to the public welfare, would be unconstitutional.

In *State Medical Board v. McCrary,* 95 Ark. 511 (130 S. W. 544, Ann. Cas. 1912A, 631, 30 L. R. A. (N. S.) 783), the validity of a statute was upheld authorizing the revocation of a license to practice medicine on the ground of "publicly advertising special ability to treat or cure chronic and incurable diseases". Appellant, in quoting the statute, inadvertently uses the word "and" instead of "or" and argues that, since it is fraudulent to advertise ability to cure incurable diseases, this case is not in keeping with *Laughney v. Maybury,* supra. However, it is observed that the statute also deals with advertising ability to *treat* incurable diseases and this does not necessarily involve any element of deception.

In the case of *Thompson v. Van Lear,* 77 Ark. 506 (92 S. W. 773, 5 L. R. A. (N. S.) 588, 7 Ann. Cas. 154), the court held that an act forbidding physicians and surgeons to solicit patients by paid agents was a valid exercise of the police power. In commenting on this case, it was said in *State Medical Board v. McCrary,* supra:

"For like reason, a statute forbidding a physician to advertise for patients in newspapers would be upheld; and, by analogy, a statute forbidding them to advertise their ability to treat and cure certain named diseases would be a valid exercise of the police power."

For other cases involving statutes regulating advertisements by those engaged in professional work as in law, medicine, and dentistry, see cases collated in note, 54 A. L. R. 400.

Plaintiff relies largely on *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74 (141 P. 132, 51 L. R. A. (N. S.) 958, Ann. Cas. 1915D, 1188), which

holds unconstitutional a statute authorizing the revocation of a license on the ground, among others, of "causing the publication or circulation of an advertisement relative to any disease of the sexual organs". This case supports the theory of appellant but its logic does not appeal to us as being sound and we decline to follow it for the reasons stated in *Laughney v. Maybury,* supra. Furthermore, this opinion, by a divided court, has been greatly weakened by the later cases of *People v. Painless Parker Dentist,* 85 Colo. 304 (275 P. 928), and *Sapero v. State Board of Examiners,* 9 Colo. 568 (11 P. (2d) 555). While these two cases involved questions different from that in *Chenoweth v. State Board,* supra, the following language in the Parker Dentist case is significant:

"There may be expressions in the majority opinion that give color to some things contained in the defendant's brief here; but that decision—*and we are not to be understood as approving of it*—is not authority for the defendant's contention here." (Italics ours.)

*Waller v. State* (Tex.), 68 S. W. (2d) 601, also supports the contentions of the plaintiff, but no discussion of the same is necessary as it is merely a repetition of the reasoning in the case of *Chenoweth v. State Board,* supra.

■ After careful consideration of the able briefs submitted, this court is of the opinion that the challenged statutory regulations were enacted by the state in the proper exercise of its police power and, therefore, they do not violate the due process clause of the federal and state constitutions. The statute has for its purpose the elevation of the standards of the dental profession and the prevention of advertising of a character ordinarily used by unscrupulous practitioners to deceive or mislead the public. Let it again be stated

that this act does not prohibit all kinds of advertising by dentists. Plaintiff may still practice his profession and engage in certain advertising but it must be done in compliance with the law.

Appellant contends that the act is class legislation and unconstitutional for the reason that it applies only to dentists. It is his theory that the act is directed against advertising and that, since advertising has the same effect regardless of the profession resorting to it, it is discriminatory to limit the same to dentists. The same contention was made in *Laughney v. Maybury,* supra, and decided adversely to appellant therein. It is not believed that the act is unconstitutional because the legislature did not cover the whole field of possible abuses. As stated in *State v. Broden,* 181 Minn. 341 (232 N. W. 517):

"In laws of this sort all evils cannot be reached at once nor every desirable object gained in one legislative session."

The same principle was thus enunciated in *New York ex rel. Bryant v. Zimmerman,* 278 U. S. 63 (73 L. Ed. 184, 49 S. Ct. 61, 62 A. L. R. 785), quoting from *Patsone v. Pennsylvania,* 232 U. S. 138 (58 L. Ed. 539, 34 S. Ct. 281):

"It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named."

In *Miller v. Wilson,* 236 U. S. 373 (59 L. Ed. 628, 35 S. Ct. 342, L. R. A. 1915F, 829), a statute fixing hours of labor for women was attacked because of certain exceptions made therein. The court said:

"The contention as to the various omissions which are noted in the objections here urged ignores the well-established principle that the legislature is not bound,

in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach.''

We think the state has the power of dealing with each profession as a class unto itself and in so doing does not violate the equal protection clause of the constitution. Class legislation is not involved since the act affects all dentists alike. Plaintiff is in no position to say that he has been unduly discriminated against because the legislature did not also enact similar legislation regulating the conduct of members of other professions. The professions of law, medicine, and dentistry are separate and distinct. Each has different requirements for admission and we think there may well be a reasonable basis for classification concerning regulation of conduct subsequent to admission.

■ We see no merit in the contention of appellant that the title to the act is not broad and comprehensive enough to cover the subject matter of the act and therefore contravenes Art. IV, § 20, of the Constitution of Oregon. The title of chapter 166, Laws of Oregon for 1933, reads thus:

''To amend section 68-1004, and section 68-1013, Oregon Code 1930, relating to the practice of dentistry, and to repeal section 68-1014, Oregon Code 1930.''

In *Oregon Growers' Co-operative Association v. Lentz,* 107 Or. 561 (212 P. 811), it is said:

''In amending a statute it is only necessary that the title to the amendatory act should refer to a particular section of an official compilation of laws: State v. Phenline, 16 Or. 107 (17 Pac. 572). And the amendment will not be objectionable to section 20, article IV of the Constitution, unless the provisions of the amendment are such as could not have been included in the original act: Ex parte Howe, 26 Or. 181 (37 Pac. 536).''

Section 68-1013, Oregon Code 1930, was enacted by chapter 353, Laws of Oregon for 1913, and is entitled an act:

"To amend sections 4777, 4779, 4780 and 4783 of Lord's Oregon Laws and to regulate the use of diplomas and certificates of dentists, and to provide punishment for the violation thereof, and to provide for the revocation and suspension of licenses for the misconduct of the holders thereof, and to provide for the issuing of licenses."

Appellant argues that the word "misconduct" in the act of 1913 includes only those acts of the practitioner which are inherently wrongful or fraudulent and is not sufficiently broad and comprehensive enough to include acts of unprofessional conduct not inherently wrong as defined in the 1933 amendment. We can not agree with this contention. In our opinion the subject matter of the amendatory act in question is germane to the title of the 1913 amendment providing for the revocation of licenses to practice dentistry. The word "misconduct" includes unprofessional acts even though not inherently wrongful.

It is urged that the statute is void for uncertainty and vagueness. The very object and purpose of the 1933 amendment was to make the regulations concerning advertising by dentists definite and certain. That plaintiff fully understands the various provisions of the act is demonstrated by the specific allegations of his complaint, showing a violation thereof. See cases in note 54 A. L. R. 404, wherein similar statutes have been held not void as being too vague and uncertain to be enforced.

The decree of the lower court is affirmed. Defendants are entitled to costs and disbursements.

ROSSMAN, J., not sitting.

CAMPBELL, J., concurs in the result.