156 So. 801

**STATE v. LEE.**

No. 32834.

July 2, 1934.

Rehearing Denied Oct. 2, 1934.

Fred G. Benton, of Baton Rouge, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and John Fred Odom, Dist. Atty., and Fred S. Le Blanc, Asst. Dist. Atty., both of Baton Rouge (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

BRUNOT, Justice.

The accused was charged with the crime of manslaughter. The court procedure was regular, and the trial resulted in the following verdict: "Guilty of involuntary homicide." The jury saw fit to recommend the accused to the mercy of the court. A motion for a new trial was filed, heard, and overruled, and the accused was sentenced to serve a term in the Louisiana state penitentiary, at hard labor, for not less than one nor more than two years. The accused appealed from the verdict and sentence.

There are four bills of exception in the transcript. The first three bills were reserved to rulings by the court during the examination of prospective jurors on their voir dire, and the fourth bill was reserved to the refusal of the judge to deliver certain requested charges to the jury.

### Bill No. 1.

Henry B. Harvey, of the regular jury venire for the week, was asked by counsel for the defendant, during the juror's examination on his voir dire, the following question:

"Mr. Harvey, if after you hear the evidence in this case you entertain a reasonable doubt as to whether or not this accident was the sole cause of death or as to whether or not the accident in this case could have resulted in death to a normal person of the same age as the deceased, will you give the accused the benefit of that doubt and acquit him?"

"To which question the District Attorney, for the State, objected on the ground that the question was hypothetical, and did not correctly state the law.

"Whereupon the court sustained the objection, * * *, to which ruling of the court the defendant, Raif Lee, through his counsel, then and there excepted and made the question propounded to said juror a part of this bill."

### Bill No. 2.

Following the reservation of bill 1, the same juror was asked this question:

"If there is evidence in this case to show that the death of Miss Callaghan was caused partially by a pre-existing disease or disability, will you acquit the accused?"

The question was objected to for the same reason stated in bill No. 1. The objection was sustained, and this bill was reserved to that ruling.

### Bill No. 3.

When Allen R. Chaney, one of the regular jury venire, was tendered to the defendant for examination on his voir dire, he was asked this question:

"If the evidence in this case fails to satisfy you that the death of this lady was due solely and entirely to the accident will you acquit the accused?"

The same objection was made to this question as was made to questions appearing in bills 1 and 2, and this bill was reserved to the ruling sustaining that objection.

The trial judge filed one per curiam to the three foregoing bills, which is as follows:

"If the state was required to prove beyond a reasonable doubt that the deceased was normal, in good health, and physically sound there would be no conviction for homicide. The killing of the aged and infirm would be no crime."

Aside from the court's per curiam, it does not appear from the record that any one of the jurors who was sworn and served as a juror on the trial of this case was not acceptable to the defendant, nor does it appear that the defendant exhausted his peremptory challenges before the completion of the jury which tried the case. It is doubtless for the reason that in the selection of a jury a defendant's right is one of rejection only, and that counsel has not exercised that right to the extent permitted by law, that he has submitted the foregoing bills without argument.

### Bill No. 4.

This bill was reserved to the refusal of the judge to deliver certain special charges to the jury. We find that six of the requested charges are fully covered by the court's general charge, and that the three requested charges which the judge refused to deliver do not correctly state the law. The special charges, which are not covered by the general

charge, and which the judge refused to deliver, are the following:

"1. I charge you as a legal conclusion that no evidence whatever has been offered by the state to support the charge of manslaughter.

"2. The act governing involuntary homicide, such as is involved in this case, provides that any person who by operation or use of any vehicle in a grossly negligent or grossly reckless manner causes the death of another person, shall be guilty of the crime of involuntary homicide. Under the act, in order to justify conviction it is necessary for the state to prove beyond a reasonable doubt that the death resulted from the accident; and if, from the evidence in this case, the jury entertains a reasonable doubt as to whether the deceased was a person of normal health, and as to whether death would have resulted from the accident if deceased had been a person of normal health, then the jury must give the accused the benefit of these doubts and acquit him."

"3. If from the evidence in this case, the jury entertains a reasonable doubt that the death of Miss Callaghan could have resulted from the rupture or breaking of a blood vessel in any part of her body, the immediate cause of which was fright or shock resulting from the accident, then the jury must give the accused the benefit of that doubt and acquit him."

The reasons assigned by the trial judge for refusing to deliver the three special charges above quoted are the following:

"The first is refused because it would involve a statement by the court of what the evidence shows. The second and third are refused because, in the opinion of the court, they do not properly state the law."

Act No. 64 of 1930 makes death resulting from gross negligence or gross recklessness in the operation or use of a vehicle a crime punishable by imprisonment, with or without hard labor, for a term not exceeding five years. Section 1. It is this statutory offense of which the accused was convicted. We understand that counsel for the accused contends that Act No. 64 of 1930 should be interpreted to mean that, if death does not result from physical injuries inflicted by the accident, but from shock, or fright, or the rupture of a blood vessel caused by the gross negligence or gross recklessness of the accused, the act of the accused does not come within the meaning of the statute, and therefore the accused should be acquitted. Counsel invokes an old common-law rule that has been modified and relaxed, even by the courts of England. In 13 R. C. L. 748, we find the following:

"In America, modern authority is divided. Some courts adhere to the early rule; whereas others have reached the conclusion that it would be unsafe, unreasonable and often unjust, for a court to hold as a matter of law, that under no state of facts should a prosecution for manslaughter be sustained where death appears to have been caused by fright, fear or terror alone, even though no hostile demonstration or overt act was directed at the person of the deceased."

If death was the result of shock or the rupture of a blood vessel directly caused by the gross negligence or gross recklessness of the accused while engaged in the operation of a

vehicle, it comes within the letter and spirit of Act No. 64 of 1930, and the trial judge so charged the jury.

In case note to Commonwealth of Kentucky v. Robert Couch, 16 L. R. A. (N. S.) 327, we find that, where the act which directly caused the condition that resulted in death to a person was itself unlawful, the perpetrator is liable for the probable consequences of his act. In the case of Ex parte Edgar M. Heigho, 18 Idaho, 566, 110 P. 1029, 32 L. R. A. (N. S.) 877, Ann. Cas. 1912A, 138, the accused was convicted of the crime of involuntary manslaughter, and in maintaining the verdict and sentence the Supreme Court of Idaho said:

"Involuntary manslaughter is defined to be 'the unlawful killing of a human being in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.' "

After reviewing the authorities at length, the court said:

"With such aid as we get from the foregoing authorities and the independent consideration we have been able to give the matter, we reach the conclusion that it would be unsafe, unreasonable, and often unjust for a court to hold as a matter of law that under no state of facts should a prosecution for manslaughter be sustained where death was caused by fright, fear, or terror alone, even though no hostile demonstration or overt act was directed at the person of the deceased. Many examples might be called to mind where it would be possible for the death of a person to be accomplished through fright, nervous shock, or terror as effectually as the same could be done with a knife or gun. If the proof in such a case be clear and undoubted, there can be no good reason for denying a conviction."

We think the quotations from the Idaho Supreme Court are in accord with the weight of authority, and therefore we think that the judge's charge to the jury in this case is correct, in every respect, and that he properly refused to deliver the special charges, to which ruling defendant's bill No. 4 was reserved.

For the foregoing reasons, the verdict and sentence appealed from are affirmed.