Argued June 5; reversed June 30; rehearing denied
September 15, 1936

# STATE *v.* BOAG

(59 P. (2d) 396)

*Leroy Lomax,* of Portland (Lomax & Lomax, of Portland, on the brief) ·for appellant.

*Earl A. Nott,* District Attorney, of McMinnville, for the State.

KELLY, J.  On the 2d day of August, 1935, defendand was driving his Ford motor truck on Wynooski street in the city of Newberg, Yamhill county, Oregon, and his truck then and there collided with a Chevrolet sedan automobile in which Mrs. Olive May was riding.

Mrs. May sustained injuries which five days thereafter resulted in her death.

Defendant is charged by the indictment with killing one Olive May by driving and operating his motor vehicle on said public highway while under the influence of intoxicating liquor and carelessly and heedlessly in wilful and wanton disregard of the rights and safety of others and especially the rights and safety of said Olive May, and without due caution and circumspection and at a speed and in a manner so as to endanger and be likely to endanger persons and property, especially the life and limb of said Olive May, and while in said condition of intoxication defendant by so driving his motor truck upon, against and into the Chevrolet sedan, in which said Olive May was riding, thereby inflicting and caused to be inflicted upon the person and body of said Olive May certain mortal injuries, fractures and contusions whereof said Olive May thereafter on the 7th day of August, 1935, did die.

Two witnesses testified that defendant was intoxicated or under the influence of liquor. This is assigned as error. We think no error was committed by receiving such testimony. Sufficient facts appear to have been narrated upon which the opinions were predicated to render such opinions admissible in evidence.

"The symptoms of intoxication are plain and apparent to any experienced man, except the man himself, * * *" *Ballard v. State*, 25 Ala. App. 457 (148 So. 752).

The defendant offered no testimony.

Mr. Ray Garling testified in substance that on the day of the accident and at about 3 o'clock in the afternoon, while driving a truck down to a schoolhouse, traveling along the highway near Rex hill, which it is

conceded is five or six miles distant from the place of the collision in suit, said Garling saw a truck on the highway meeting him, and when the truck was coming around a curve, it was driven off the edge of the pavement, and looked to him as if it almost tipped over, after which the two trucks passed each other, but the other truck was back on the pavement on its proper side by the time the trucks passed. This witness testified that he did not recognize the driver of the other truck, but noticed it was a Ford truck of a certain make and that there were not many other trucks of that kind on the highway.

Objection was made by defendant when witness Garling was asked to state how the truck was being driven, how it was being operated at that time. This objection was overruled. Subsequently this witness testified in effect as follows as shown by the bill of exceptions, from which we quote:

"That about two weeks later Mr. Walter J. Hatfield, a state policeman, came to him and told him that a truck belonging to the defendant was involved in an accident near the pulp and paper mill on the afternoon of the day he met this truck at Rex Hill, and told him that the truck involved in the accident was in Thompson Motor Company's Garage, and wanted him to go and examine the same and see if he could identify it as the truck he met on Rex Hill. That Hatfield had a subpoena for him at that time to appear before the Grand Jury. That he went with Hatfield to Thompson Motor Company's Garage and saw the truck which was in the collision, and that he identified it as the truck which he met some two weeks prior thereto on the highway at Rex Hill.

"Whereupon counsel for the defendant moved the court to strike the foregoing testimony of the witness and instruct the jury to disregard it as not being properly connected with his former testimony, and it appearing that his testimony to the effect that he iden-

tified the truck as the one he saw at Rex Hill was purely an opinion of the witness not founded upon any facts from which he could properly identify the truck, too remote and speculative, which motion was denied by the court, and an exception was taken by counsel for defendant, and duly allowed by the court.''

Witness Hatfield testified, but there is nothing in the record of his testimony to the effect that he directed the attention of witness Garling to any truck, or that he asked Garling to identify any truck as the one about which Garling testified, or even that the truck driven by defendant was taken to any garage.

There is nothing in the record before us that any witness knew or claimed to know that the truck in the garage identified by witness Garling, as the truck he saw at Rex hill, was the truck driven by defendant.

The certificate of the trial judge authenticating the bill of exceptions contains the following clause:

''That said Bill of Exceptions contains a fair statement of the substance of all of the testimony and sufficient thereof to fully explain each and every exception taken by counsel for the defendant * * * and sufficient of the testimony to fully explain each and every ruling of the court and each and every objection and exception taken by counsel for the defendant.''

■ The motion to strike Mr. Garling's testimony should have been sustained. We think this testimony was prejudicial to defendant.

The state urges that its purpose was merely to establish that defendant was under the influence of intoxicating liquor. When evidence of intoxication is material to the charge, the same may be proved to have existed both before and after the offense; (1 Wigmore on Evidence, (2d Ed.) § 235), but the record fails to disclose that either counsel or the court so limited or restricted it. Moreover, it was hearsay as far as it

intended to identify defendant as the driver of the truck about which Garling testified.

■ Error is also predicated upon the refusal of the court to give the following instruction:

"I instruct you that even if you find beyond a reasonable doubt that the defendant was intoxicated, that in and of itself is not sufficient to convict him. You must go further and find that the defendant was not operating his truck with due caution and circumspection, and that the operation of his truck without due caution and circumspection was the proximate cause of the collision, and if you find that the defendant was operating his truck with due caution and circumspection, even though intoxicated, then your verdict must be not guilty."

The refusal to give this instruction did not constitute error. Treating the case as if being under the influence of intoxicating liquor is synonymous with being intoxicated, such instruction does not correctly state the law of the case.

Section 15-201, Oregon Code 1930, declares that the driving and operation of an automobile by any person while such person is intoxicated is an unlawful act.

Section 14-206, Oregon Code 1930, provides, among other things, that—

"If any person shall, in the commission of an unlawful act, * * * involuntarily kill another, such person shall be deemed guilty of manslaughter."

Giving effect to the rule, which some courts do not recognize (*State v. Trent,* 122 Or. 444 (252 P. 975, 259 P. 893)), that under the law as declared in the section last quoted, if the act is not inherently dangerous and there is no negligence in its performance, there is no criminal liability unless the act is *malum in se* and not merely *malum prohibitum,* we are nevertheless con-

fronted with the rule that driving a motor car while intoxicated is *malum in se,* and homicide resulting thereby is not excusable on ground of misadventure: *State v. Budge,* 126 Me. 223 (137 Atl. 244, 53 A. L. R. 241) ; *People v. Townsend,* 214 Mich. 267 (183 N. W. 177, 16 A. L. R. 902). We quote from *People v. Townsend,* supra:

"Voluntary intoxication is an offense not only malum prohibitum, but malum in se, condemned as wrong in and of itself by every sense of common decency and good morals from the time that Noah in his drunkenness brought shame to his sons that they backed in to cover his nakedness, and Lot's daughters employed it for incestuous purposes. Drunkenness was declared wrong in and of itself, and punishment provided by the Israelites ; by the ancient Chinese in an imperial edict about the year 1120 B. C., called 'The Announcement about Drunkenness;' in ancient India by the ordinances of Manu. In Rome the censors turned drunken members out of the Senate and branded them with infamy. In England 300 years ago drunkenness was pilloried as the root and foundation of many sins, such as bloodshed, stabbing, murder, swearing and such like, by the statute, 4 Jac. I, chap. 5, and the Ecclesiastical judges and officers were granted power to censure and punish offenders, and Bacon, in his Abridgement of the Common Law, lists drunkenness as one of the sins of heresy. In Massachusetts Bay Colony in 1633-34, one Robte Colos, for drunkenness, was disfranchised and sentenced to wear a red letter D upon a white background for a year. One of the acts passed at the first session of the General Assembly of the Northwest Territory and approved December 2, 1799, provided a penalty for being drunk in a public highway. Our Statute Comp. Laws 1915, § 7774, declares drunkards to be disorderly persons, and § 15530 makes it an offense for any person to be drunk or intoxicated in any street or highway.

"Voluntary drunkenness in a public place was always a misdemeanor at common law; and it was always wrong morally and legally. It is malum in se. State v.

Brown, 38 Kan. 390, 16 P. 259, 8 Am. Crim. Rep. 165.''
(Mr. Justice Wiest in People v. Townsend, supra.)

Error is also predicated upon the court's instruction to the effect that if the defendant caused the death of Olive May by operating an automobile upon or over any highway, while under the influence of intoxicating liquor, he would be guilty of manslaughter.

It is urged by defendant that in addition to the elements of the crime mentioned in the foregoing instruction, there is necessarily the element of the operation of defendant's truck without due caution and circumspection; and that this must also be established by the state, even though defendant caused the death of deceased by operating his truck upon a highway while he was under the influence of intoxicating liquor.

To determine whether the contention of defendant is correct, we must construe sections 15-201 and 15-202, Oregon Code 1930. These sections are the first two sections of chapter 182, General Laws of 1925, p. 267. They are as follows:

''Sec. 15-201. Driving vehicle declared unlawful.— It shall be unlawful for any person, while in an intoxicated condition, or under the influence of intoxicating liquor, to drive, operate or run, upon or over any highway or street or thoroughfare within the state of Oregon, whether within or without a municipality, any automobile, truck, motorcycle or any other motor vehicle.''

''Sec. 15-202. Manslaughter—Operating motor vehicle while intoxicated.—If the death of any human being shall be caused by the operation of any such motor vehicle contrary to this act by any person while intoxicated or under the influence of intoxicating liquor, such person shall be deemed guilty of manslaughter, and upon conviction, shall be punished as provided by existing law relating to manslaughter.''

There is nothing in the act of which the two sections above quoted are a part concerning the manner of operating a motor vehicle except the inhibition against operating such vehicle upon a highway, street or thoroughfare by any person while such person is in an intoxicated condition, or under the influence of intoxicating liquor.

"As everybody knows, an intoxicated driver of a motor vehicle is a menace to the lives, limbs, and property of others. By the adoption of this statute the Legislature sought to reduce this menace." *Terry v. State,* 172 Miss. 303 (160 So. 574).

■ It is within the police power of the state to interdict under the penalty the hazard to the public safety of motor vehicle driving by those who are intoxicated or under the influence of intoxicating liquor: *Nelson v. State,* 97 Tex. Cr. R. 210 (261 S. W. 1046).

■ A statute penalizing the driving of an automobile upon a public street while under the influence of intoxicating liquor is valid and constitutional: *State v. Graham,* 176 Minn. 164 (222 N. W. 909) ; *Basson v. State,* 205 Ind. 532 (187 N. E. 344) ; *Smith v. State,* 124 Neb. 587 (247 N. W. 421).

■ The offense of driving or operating a motor vehicle on a public highway by any person, who at the time is intoxicated or under the influence of intoxicating liquor, is complete and punishable without regard to whether the driving or operation is negligently done or not and regardless of whether any one has been injured thereby: *Hasten v. State,* 35 Ariz. 427 (280 P. 670) ; *State v. Giles,* 200 Iowa 1232 (206 N. W. 133, 42 A. L. R. 1496) ; *Holley v. State,* 25 Ala. App. 260 (144 So. 535) ; Id., 225 Ala. 597 (144 So. 537) ; *Phillips v. State,* 25 Ala. App. 286 (145 So. 169) ; *Austin v. State,* 47 Ga. App. 191 (170 S. E. 86).

In other words, the elements of the crime, under the statute are: first, the driving or operation of an automobile; second, on a public highway; and third, intoxication of the driver, or that the driver be under the influence of intoxicating liquor. Subtitle III of Annotation entitled, "Driving automobile while intoxicated as a substantive criminal offense." Vol. 42 A. L. R. 1498, 1500, and authorities there cited.

A requested charge in a prosecution for unlawfully driving an automobile while intoxicated, that "unless he did or failed to do some act or thing in the operation of such automobile that he would not have done but for the fact of such liquor" does not state the law as the law does not withhold its forbiddance until an intoxicated man on the highway kills somebody or wrecks his own or some other car. If he is drunk or is under the influence of intoxicants, he is forbidden to drive an automobile on a public highway within the state; and the law is violated when he does so drive his car, as much if he keeps the middle of the road as if he wrecks a dozen cars; *Stewart v. State,* 108 Tex. Cr. R. 199 (299 S. W. 646).

The offense for which defendant was tried, in so far as the phase of it is concerned which is now being discussed, includes but one additional element, namely, that the death of a human being shall be caused by the operation of such motor vehicle.

It is to be noted that this added element does not include the further requirement of negligence. The clear import of the language of the statute is controlling.

In the case at bar, the learned trial judge expressly instructed the jury that, in order to warrant conviction, defendant's unlawful driving must be shown to have been the proximate cause of the death of Mrs. May.

The supreme court of Indiana considered an instruction quite similar to the one criticized in the case at bar. There the defendant did not assign error because of the instruction, but urged that the evidence was insufficient to warrant his conviction. The opinion of the court was rendered by Mr. Chief Travis. We quote from its final paragraph:

"The court instructed the jury that: If the defendant, Blackburn, was acting in violation of a positive statute, and this violation was the proximate cause of the death of Velma West, 'and [that] makes defendant guilty of involuntary manslaughter.' This instruction was repeated by another numbered instruction to the jury. Neither of these instructions is presented as erroneous by appellant upon appeal. We think the evidence narrated, believed by the jury, proves that appellant violated the law relating to driving an automobile when under the influence of intoxicating liquor, and that such circumstances, but for which the collision resulting in the death of Velma West, would not have occurred. The evidence, as against the attack made, is sufficient to sustain the verdict. Judgment affirmed." *Blackburn v. State,* 203 Ind. 332 (180 N. E. 180).

In the following definition sanctioned by the authorities named it will be noted that the element of negligence is absent where the killing resulted from an unlawful act:

■ Involuntary manslaughter is the killing of another occurring without malice and unintentionally, in doing some unlawful act not amounting to felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself or through negligent omission to perform legal duty: *Com. v. McTague,* 112 Pa. Super. 471, 475 (171 Atl. 406); *State v. Lee,* 180 La. 494 (156 So. 801); *Nichols v. State,* 187 Ark. 999 (63 S. W. (2d) 655); *State v. Stansell,* 203 N. C. 69 (164 S. E. 580).

The unlawfulness of the act in connection with which the killing occurs is the element which distinguishes involuntary manslaughter from a killing excusable as by accident or misfortune: 29 C. J., Homicide, p. 1149, note 37, citing *Bias v. U. S., 3* Ind. Terr. 27 (53 S. W. 471); *Trimble v. Com.* 78 Ky. 176.

"Homicide *per infortunium* or *misadventure,* is where a man, doing a lawful act, without any intention of hurt, unfortunately kills another: as where a man is at work with a hatchet, and the head thereof flies off, and kills a standerby; or where a person qualified to keep a gun, is shooting at a mark, and undesignedly kills a man; for the act is lawful, and the effect is merely accidental. So where a parent is moderately correcting his child, a master his apprentice or scholar, or an officer punishing a criminal, and happens to occasion his death, it is only misadventure; for the act of correction is lawful: but if he exceeds the bounds of moderation, either in the manner, the instrument, or the quantity of punishment, and death ensues, it is manslaughter at least, and in some cases (according to the circumstances) murder; for the act of immoderate correction is unlawful. Thus, by an edict of the emperor Constantine, when the rigour of the Roman Law with regard to slaves began to relax and soften, a master was allowed to chastise his slave with rods and imprisonment, and, if death accidentally ensued, he was guilty of no crime: but if he struck him with a club or a stone, and thereby occasioned his death; or if in any other yet grosser manner, *immoderate suo jure utatur, tunc reus homicidii sit''.*

"But to proceed. A tilt or tournament, the martial diversion of our ancestors, was however an unlawful act: and so are boxing and sword-playing, the succeeding amusement of their posterity: and therefore if a knight in the former case, or a gladiator in the latter, be killed, such killing is felony or manslaughter. But if the knight command or permit such diversion, it is said to be only misadventure; for then the act is lawful. In the like manner, as by the laws both of Athens and Rome, he who killed another in the *pancratium,* or public

games authorized or permitted by the state, was not held to be guilty of homicide. Likewise to whip another's horse, whereby he runs over a child and kills him, is held to be accidental in the rider, for he had done nothing unlawful: but manslaughter in the person who whipped him, for the act was a trespass, and at best a piece of idleness, of inevitably dangerous consequence. And in general, if death ensues in consequence of an idle, dangerous, and unlawful sport, as shooting or casting stones in a town, or the barbarous diversion of cock-throwing, in these and similar cases, the slayer is guilty of manslaughter, and not misadventure only, for these are unlawful acts." II Chittys Blackstone, pp. 137-8, Star par. 183.

"Wharton on Homicide, page 35, says it is 'involuntary manslaughter, when a man doing an unlawful act, not amounting to felony, by accident kills another. It differs from homicide excusable by misadventure in this: that misadventure always happens in the prosecution of a lawful act, but this species of manslaughter in the prosecution of an unlawful one. When a person does an act lawful in itself, but in an unlawful manner, this excepts the killing from homicide excusable *per infortunium,* and makes it involuntary manslaughter' which is punishable by fine or imprisonment in jail, one or both, at the discretion of the jury. (Cicero Brown v. Commonwealth, M. S. Opinion November 15th, 1879)". *Trimble v. Com.,* 78 Ky. 176.

Speaking through the late Mr. Justice Brown this court has declared that—

"It is universally held that the fact that the act which caused a homicide was not a misdemeanor at common law does not relieve the killing from constituting manslaughter if the act is made a misdemeanor by statute." State v. Trent, supra, at page 476.

In this case the distinction is noted between the rule where there is no statute, the effect of which is to abolish any distinction between *malum in se* and *malum prohibitum,* and the rule where there is such a statute: *State v. Trent,* supra, at p. 447.

To hold that in order to convict of manslaughter failure to use due care and circumspection in the operation of the motor vehicle must be proved, when the charge is that of killing a human being in the operation of said vehicle upon a highway while the driver thereof is under the influence of intoxicating liquor, is to render section 15-202, supra, redundant and meaningless.

■ Without any reference whatever to section 15-202, and without regard to whether the operator of a motor vehicle is under the influence of intoxicating liquor or not, causing the death of a person by operating a motor vehicle without due care or circumspection constitutes manslaughter. The act of so operating a motor vehicle is inherently dangerous, involves negligence in its performance and is expressly prohibited by law, hence, it constitutes such an unlawful act as in the performance of which, if it causes death of another person, would constitute manslaughter under section 14-206, supra.

So, too, with respect to causing the death of another by operating a motor vehicle upon a highway while the operator thereof is intoxicated.

Operating a motor vehicle while intoxicated is forbidden by statute, is *malum in se,* and is therefore such an unlawful act that if death of another is caused in its commission, the one committing it is guilty of manslaughter under said section 14-206, supra.

The only new or added offense, indeed, the only purpose to be accomplished or justification for, the enactment of said section 15-202, is to declare that if the death of any human being shall be caused by the operation of a motor vehicle by any person while under the influence of intoxicating liquor such person shall be deemed guilty of manslaughter.

In a word, it abrogates and annuls the distinction between the meaning of the word "intoxicated" and the phrase, "under the influence of intoxicating liquor", and in the view of the law of involuntary manslaughter renders those two expressions synonymous.

■ We hold, therefore, that by reason of the express legislative declaration of section 15-202, supra, the learned trial judge committed no error in so instructing the jury.

■ The state contends that no transcript or bill of exceptions has been filed as required by the rules of this court and the statutes of the state of Oregon. We think that this contention is untenable. The bill of exceptions is in narrative form, but we find no fault with it. The trial lasted three days. The outline of the testimony in the bill of exceptions is confined to but 12 pages. To question its accuracy or its sufficiency would be to question the certificate of the trial judge. We garland its conciseness with our gratitude.

Because of the error in receiving testimony as to the manner in which a truck was being driven at a point five or six miles distant from the place of the collision and the hearsay nature of the testimony connecting defendant therewith, the judgment of the circuit court is reversed and the cause remanded for such further proceedings as may not be inconsistent herewith.