Submitted September 15, reversed November 25, 1964

STATE ex rel NILSEN v. WHITED et al

396 P. 2d 758

Robert Y. Thornton, Attorney General of Oregon, Salem, and H. J. Belton Hamilton, Thomas N. Trotta, and Thomas Y. Higashi, Assistant Attorneys General, Portland, filed a brief for appellant.

No appearance for respondents.

Green, Richardson, Green & Griswold, and Donald S. Richardson and Allen T. Murphy, Jr., Portland, filed a brief amicus curiae.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, the Commissioner of the State Bureau of Labor, from a judgment order of the circuit court which sustained the defendants' demurrer and dismissed the complaint. The order sustained subsection 2 of defendants' demurrer:

"* * * on the grounds that ORS 652.335 is unconstitutional and void as a denial of substantive due process in that it is not within the power of the legislature to create a debt from one person to another without the consent of the person charged unless for some breach of contract, express or implied, or for some tort or crime and ORS 652.110 et seq. creates such liability without breach of contract, either express or implied, and without the commission of a tort or a crime."

Plaintiff assigns as error the above order. The sole question presented by this appeal is the validity of ORS 652.335; that is, whether that section of our laws is a valid exercise of the police power of the state or an unconstitutional deprivation of property without due process of law.

The following allegations of the complaint must be taken as true for purposes of this appeal. Plaintiff's assignors were six employees of defendant Tom Whited. The other defendants, Annable and De Vos, were holders of a class "B" liquor dispensers license for the Stirrup Room of a hotel in Baker. The Stirrup Room is a commercial establishment which the two defendants last named owned and operated under the

provisions of the state Distilled Liquor Control Act (ORS 472.010 to 472.990). Whited operated the kitchen and dining facilities in the Stirrup Room. He failed to pay the employees regular wages and apparently absconded. Neither he nor his assets were available for collection of the wages. Plaintiff seeks to recover from the defendants, Annable and De Vos, the licensees, the regular wages due the assignors and the statutory penalty for defendants' willful refusal to pay such wages when due (ORS 652.140, 652.150).

ORS 652.335 provides:

"(1) A person operating a commercial establishment where food is cooked and served who holds a dispenser's license issued under ORS 472.110 is liable for all valid wage claims of individuals employed in the kitchen facilities and dining space of such establishment who are not employed by such person, if the wage claims cannot be enforced against the employer of such individuals. The commissioner may in such a case proceed under ORS 652.310 to 652.410 against the person operating the establishment as if that person had employed the individuals assigning the wage claims.

"(2) This section does not impose any liability not otherwise imposed by law for compensation for the performance of an individual's personal services in excess of a period of 60 days, nor does it subject the person operating an establishment described in this section to criminal penalties for violation of any law providing for payment of wages."

The section was added to the labor code by Chapter 475 of the Session Laws of 1961 before defendants Annable and De Vos received their liquor dispenser license. The section purports to make the liquor dispenser licensee personally liable for the accrued wages

of the food services employees if their employer or his assets are not amenable to enforcement procedures. Any liability asserted is limited to 60 days regular wages plus penalties under ORS 652.140 and 652.150 for the willful refusal to pay wages when due; but may not include criminal penalties. Being treated as employer for the purposes of this provision, the licensee presumably has available the defenses of insolvency and lack of knowledge that wages were due. See *State ex rel Nilsen v. Johnston,* 1962, 233 Or 103, 377 P2d 331. His liability, if any, will be determined only in a judicial action under the general procedure for the enforcement of wage claims by the commissioner as assignee of the wage claimants. ORS 652.310 to 652.410.

We believe that the purpose of ORS 652.335 is twofold: (1) to provide protection for the wages of employees in kitchens and dining rooms that are parts of commercial establishments conducted by licensed dispensers, and (2) to secure for the entire establishment, conducted by licensees, the better administration that the legislature evidently believed would be manifested when licensees realize that they are responsible for the wages of the kitchen and dining room staff. That postulate is based upon a belief that if a person who operates a business enterprise knows that he is responsibble for the debts of the person whom he installs in charge of an integral part of the venture, he will exercise greater caution in the selection of his appointee. He will avoid fly-by-nights and seek stability.

It is plain that ORS 652.335 is a step towards better supervision and control of the sale and consumption of distilled liquor by the glass in restaurants and

private clubs. The exercise of the police power is not limited to the enactment of legislation necessary for preserving good order or public health and safety; *State v. Hudson House, Inc.,* 1962, 231 Or 164, 371 P2d 675; *Semler v. Oregon State Board of Dental Examiners,* 1934, 148 Or 50, 34 P2d 311, affirmed, 294 US 608, 79 L Ed 1086; nor is the exercise of the power restricted to situations of overriding necessity, *Baer v. City of Bend,* 1956, 206 Or 221, 292 P2d 134.

Governmental protection from the evils of traffic in intoxicating liquor has generally been considered an inherently proper subject for the exercise of the police powers, see 48 CJS, Intoxicating Liquors, Sec. 36, p. 170; Freund, Police Power, Sec. 205. It is important to observe that Art. I, Sec. 39, of the Oregon Constitution authorizes the legislature to enact legislation implementing the peoples' intent and purpose in adopting that amendment through the initiative procedure. Article I, Sec. 39, provides:

> "* * * The Legislative Assembly shall provide in such detail as it shall deem advisable for carrying out and administering the provisions of this amendment and shall provide adequate safeguards to carry out the original intent and purpose of the Oregon Liquor Control Act, including the promotion of temperance in the use and consumption of alcoholic beverages, * * *"

The test of a constitutional exercise of legislative will is the same whether the authority derives from the police power inherent in the sovereign or express constitutional grant by the people. The legislature is not the final arbiter of the constitutionality of its enactments. All legislation, authorized by the police power, must pass the judicial test of reasonableness: *Union Fisherman's Co. v. Shoemaker,* 1921, 98 Or

659, 193 P2d 476; *Anthony v. Veatch,* 1950, 189 Or 462, 220 P2d 493, 221 P2d 575; *Christian v. LaForge,* 1952, 194 Or 450, 242 P2d 797; *Bowden v. Davis,* 1955, 205 Or 421, 289 P2d 1100; *State v. Hudson House, Inc.,* supra.[1] When the subject to which the statute relates is within the scope of legislative power, validity is assured if the ends sought to be attained are appropriate and the means chosen reasonable: *Savage v. Martin,* 1939, 161 Or 660, 91 P2d 273; *Robertson v. City of Salem,* 1961, 191 F Supp 604, and cases cited above. We do not examine the wisdom of the legislative choice; that choice need not be the best, it is required to be only fairly appropriate, *Christian v. La-Forge,* supra; *Foeller v. Housing Authority of Portland,* 1953, 198 Or 205, 256 P2d 752. We defer to the large measure of legislative discretion in determining the needs of the public and the measures necessary to satisfy them: *State ex rel Overhulse v. Appling,* 1961, 226 Or 575, 361 P2d 86. Precedents already cited show that there is a strong presumption in favor of the reasonableness and validity of police power regulations. The party asserting unconstitutionality labors under a heavy burden of proof: *Semler v. Oregon State Board of Dental Examiners,* supra; *Schmidt v. City of Cornelius,* 1957, 211 Or 505, 316 P2d 511; *Port of Umatilla v. Richmond,* 1958, 212 Or 596, 321 P2d 338; *Jehovah's*

---

[1] Whatever the test and emphasis may have been decades ago, it is clear that the test of reasonableness is the only one sanctioned today. Eastman v. Jennings-McCrae Logging Co., 1914, 69 Or 1, 138 P 216, 53 ALR 883, and Johnson v. Jennings-McCrae Logging Co., 1914, 70 Or 16, 138 P 236, cited and relied on by the defendants in their memorandum in support of their demurrer in the lower court are inapposite. The emphasis in measuring constitutionality is changed today. See Lockner v. New York, 1908, 198 US 45, 25 S Ct 539, 49 L Ed 937; Nebbia v. New York, 1934, 291 US 502, 54 S Ct 505, 78 L Ed 940, and cases cited in body of opinion.

*Witnesses v. Muller,* 1958, 214 Or 281, 330 P2d 5; *Croft v. Lambert,* 1961, 228 Or 76, 357 P2d 513. Our construction of ORS 652.335 is a reasonable foundation for its validity: *State v. Harmon,* 1961, 225 Or 571, 358 P2d 1048; *Priester v. Thrall,* 1961, 229 Or 184, 349 P2d 866; *Simons v. Smith,* 1961, 229 Or 277, 366 P2d 875.

Due Process does not foreclose legislation reasonably designed to meet the exigencies of public necessity. Constitutional liberties are not absolute; the use of property is subject to reasonable restraints imposed for the protection of the general welfare: *Foeller v. Housing Authority of Portland,* supra; *Baer v. City of Bend,* supra. The sale of intoxicating liquors by the glass is not a common right of citizenship protected by the Fourteenth Amendment: *State v. Richardson,* 1906, 48 Or 309, 85 P 225, and may be entirely prohibited: *Brown and Bennett v. Powers,* 1910, 146 Iowa 729, 125 NW 833: Twenty-first Amendment. A license to sell merely grants a temporary privilege; no vested property rights are thereby created.[2]

The pressures exerted by the legislature to promote the intent of Article I, Sec. 39, to assure temperate use of liquor through sales in restaurants licensed to dispense liquor by the glass were discussed in *Van*

---

[2] ORS 472.141 (A license is "a purely personal privilege"), Perry v. Oregon Liquor Control Commission, 1947, 180 Or 495, 177 P2d 406, Gouge v. David, 185 Or 437, 202 P2d 489, Van Ripper v. Oregon Liquor Control Commission, 1961, 228 Or 581, 365 P2d 109. And see Laughlin v. Tillamook County, 1915, 75 Or 506, 147 P 547, Manchester Press Club v. State Liquor Commission, 1938, 89 NH 442, 200 A 407, 116 ALR 1093; But Cf. Francis v. Fitzpatrick, 1943, 129 Conn 619, 30 A2d 552, 145 ALR 505, where the court stated: "* * * Neither the power of the state to prohibit all traffic in alcoholic liquors nor legislative declarations that a permit constitutes a privilege and not property renders inapplicable constitutional guaranties such as that of equal protection of the laws. * * *"

*Ripper v. Oregon Liquor Control Commission,* 1961, 228 Or 581, 365 P2d 109. ORS 652.335 is a further expression of that policy. The evil sought to be remedied is not the separation of the food service and liquor operations; it is the prevention, so far as possible, of the separation, and especially the evil consequences that may occur when an irresponsible manager who was placed in control of the food services vanishes. In an instance of the kind just mentioned the allocation of the risk is made by ORS 652.335. It is placed upon the licensee. The commission pursuant to the powers granted to it by ORS 471.730 (5) adopted Regulation 17 which requires every licensed commercial establishment to receive not less than 25 percent of its gross income from food. *Van Ripper v. Oregon Liquor Control Commission,* supra. It is therefore apparent that the licensed establishment can continue to operate only as long as it continues to serve food. When the sale of the latter ceases the sale of liquor must also cease. For those purposes food and liquor are unitary. They are the integral parts of the business that the licensee was authorized to operate. The licensee is the individual to whom the commission looks. If the manager of the food service disappears and the licensee wishes to continue to serve liquor he must at once take charge of the food feature. Accordingly the questioned legislation is but a recognition of the practical fact which confronts the licensee when the operator whom he placed in charge of the food service vanishes.

Manifestly the legislature sought to promote responsible operations by the licensees, or create conditions which would cause licensees to choose responsible operators. The responsibilities imposed by Regu-

lation 17 (see *Van Ripper,* supra,) were not to be circumvented by a facile divorce of the bipartite operations; nor were the earnings of the food services employees to be jeopardized. Such an allocation of risk is peculiarly within the competence of the legislature. The allocation through ORS 652.335 is reasonable as an exercise of the police power or an implementation of Article I, Sec. 39. An incidental regulation in aid of major regulation of a proper subject is valid where it is of reasonable service to the accomplishment of the objects sought to be attained: *State v. Dickstein,* 1938, 89 N.H. 546, 3 A2d 115; *Perry v. Oregon Liquor Control Commission,* supra, note 2.

The grounds adopted below for a finding of unconstitutionality do not suffice here. The ordinary rule there expressed—the legislature is without power to create a debt from one person to another—is subject to exception, if not totally inapplicable in our circumstances. There are many examples of the legislative imposition of personal liability; ORS 652.335 adds another to the list. Most have been upheld unless shown to be arbitrary and unreasonable.[9]

"In the absence of organic restraint, the legislature may for the general welfare of society im-

[9] See, e.g., In re Idleman's Commitment, 1934, 146 Or 13, 27 P2d 305, upholding personal liability of relatives for maintenance of insane persons.

Eiger v. Garrity, 1918, 272 Ill 127, 111 NE 735, Affirmed 246 US 97, 38 S Ct 287, 63 L Ed 596, upholding a "civil damage" act (Dram Shop Act) imposing personal liability on the liquor licensee for injuries caused by person served on his premises, Gibbons v. Cannaven, 1946, 393 Ill 376, 66 NE2d 370, and compare annotation 169 ALR 1203.

Sullivan v. Oregon R & N Co., 1890, 19 Or 319, upholding the imposition of absolute liability on railroads for range stock killed for failure to fence, see annotation 53 ALR 875, and Compare Prentiss v. National Airlines, 1953, 112 F Supp 306, DC NJ,

pose obligations and responsibilities otherwise non-existent; and the creation of such liability, even though imposed irrespective of fault or agency, is not violative of due process, if it rests on reasonable grounds of policy * * *." 16A CJS, Constitutional Law, Sec. 630, p. 878, 879.

Recent U. S. Supreme Court decisions raise some doubt as to whether courts still possess power on the basis of the Fourteenth Amendment to declare state legislation unreasonable, and, therefore, unconstitutional. The defendants do not state whether they predicate their challenge on the Fourteenth Amendment or on the Oregon Constitution. Since we conclude that ORS 652.335 is based upon reasonable policy grounds and is, therefore, constitutional it does not matter which clause we base that conclusion upon. We conclude that ORS 652.335 is therefore constitutional and not an

---

imposing liability for injuries to land or persons caused by aircraft.

See 61 ALR 866 and supplemental annotations in 83 ALR 878, 88 ALR 174, 112 ALR 416, 135 ALR 481, for cases upholding statutes imposing personal liability upon owner for injury or damage inflicted by another operating his automobile.

See State v. City of Marshfield, 1927, 122 Or 330, 259 P 203, upholding imposition of lien on land of person responsible for starting and spread of forest fires, and cf. 42 ALR 783, 45 ALR 870.

See Whites Market v. Dixie Creek Gold Mining Co., 1938, 159 Or 406, 80 P2d 712, upholding workmen's compensation law imposing absolute liability for injury in course of employment without regard to notions of fault.

For other changes in remedies and rights, statutes abolishing the right of action for breach of promise to marry, alienation of affections can be found. And cf. our statute imposing absolute criminal liability for drunk driving without regard to negligence or harm, State v. Boag, 1936, 154 Or 354, 59 P2d 396; and Holden v. Pioneer Broadcasting Co., 1961, 228 Or 405, 365 P2d 845, allowing retraction as defense to defamation charge as per statute held therein constitutional.

arbitrary or unreasonable exercise of the state's police powers.

There is no issue before us as to the constitutionality of the penalty sought to be enforced for nonpayment of wages due. Cf. *State ex rel Nilsen v. Johnston,* supra. The section does not violate the equal protection clause. The classification is reasonable and bears a real and substantial relation to the evil sought to be remedied: *Namba et al v. McCourt and Neuner,* 1949, 185 Or 579, 603, 612, 204 P2d 569; *Sproul v. State Tax Commission,* 1963, 234 Or 754, 383 P2d 754.[4]

A business enterprise which consists of the sale or manufacture of alcoholic liquors does not have the same degree of protection under the due process clause as another concern which manufactures or sells food items. However, even though the liquor concern has less protection under constitutional provisions than some other enterprises, it cannot be subjected to unreasonable legislative measures and other enactments which cannot be supported with good reason.

ORS 652.335 is constitutional. It was error for the lower court to conclude to the contrary. The order sustaining the demurrer and dismissing the complaint is reversed.

Justice PERRY and Justice SLOAN concur in this opinion.

McALLISTER, C. J., concurring in the result.

I agree that ORS 652.335 can be sustained as a valid exercise of police power in the control of traffic

---

[4] The invoking of notions of implied consent (see Perry v. OLCC, supra note 2) or compensation for benefit received (implied contract) suggested in appellant's brief, and of notions of suretyship is unnecessary to the disposition we make of this appeal.

in liquor, and on that basis concur in the result of the opinion by ROSSMAN, J.

DENECKE, J., specially concurring.

I agree that the wage statute is not violative of any due process requirement. Unlike the majority, however, I do not believe that liquor control is the basis for this exercise of the police power. In my opinion the connection between liquor control and the payment of the food contractor's employees is tenuous. I would rather base the exercise of the police power on the state's interest in the payment of wages to certain classes of wage earners.

Wages often have been singled out for special legislation. ORS 562.110 et seq. There are statutes fixing penalties if wages are not paid on time, ORS 652.150, allowing attorney fees for bringing action to collect wages, ORS 652.200, providing for bonds to insure the payment of wages, ORS 652.340.

Wages of certain kinds of employees have been selected for special legislative treatment. The legislature has provided that the wages of certain employees shall be a lien on the real and personal property of persons who have not contracted for the wage earner's services. This is the import of the mechanic's lien statutes and statutes providing labor liens for loggers, woodworkers, fishermen, etc. ORS 87.005 et seq. In each of these instances the employee has labored upon the property of the owner and thus conferred a benefit upon the owner.

Additional protection is extended to laborers employed on construction projects for the state or any subdivision thereof. Contractors are required to furnish a bond guaranteeing payment of the wages of

all laborers, whether they are employees of the contractor or others. ORS 279.510. Here, again, the labor of all employees upon the job, whether employees of the contractor, or of others, benefits the contractor by contributing to the performance of the contractor's contract.

ORS 652.335, the statute in question here, also can be regarded as legislation designed to protect wage earners who confer a benefit on the party declared responsible for their wages. In this case the labor of plaintiff's assignors, the employees of the food service contractor, directly benefited the defendants. The defendants must have food served at their premises or they will lose their liquor license. Art I, § 39, Oregon Constitution. The employees earn their wages by providing this food service. Under these circumstances the legislature is empowered to provide that the person holding the liquor dispensing license is liable for the wages of the food service employees, whether they are employed by the license holder or by another with whom he has contracted to furnish the indispensable food service.

The exercise of that power by the legislature would not violate "substantive due process" under the Fourteenth Amendment as that phrase has been interpreted by the courts either before or after *Nebbia v. New York,* 291 US 502, 54 S Ct 505, 78 L ed 940 (1934). See 39 Or L Rev 138, 150-152 (1960).

Assuming for the purpose of this concurring opinion that Art I, § 20, of the Oregon Constitution requires both "substantive" and procedural due process, ORS 652.335 does not violate this constitutional provision. The imposition of responsibility for the payment of wages of persons who have benefited the

obligor by their labor is within the power of the legislature.

The question still remains whether this statute violates the equal protection clause of the United States or Oregon Constitutions, Art I, § 20. The statute has selected one business, liquor dispensing, and required the proprietors to be responsible for the wages of employees of the food concessionaires. Whether this is permissible under the Equal Protection Clause depends upon whether the dispensing of liquor, together with food service, a joinder required by the Oregon Constitution, makes such an operation sufficiently different so as to warrant classifying it separately from other businesses where food is sold through a concessionaire. See *Foeller v. Housing Authority of Portland,* 198 Or 205, 259, 256 P2d 752, 777 (1953).

Businesses, other than liquor dispensers, which serve food do so for two purposes. Either the businessman expects to profit directly from the sale of the food or he expects that the service of food will attract customers to his premises and thereby increase sales of other services or goods. In either event the sale of food is to produce a profit. This motive normally will cause the food concession to be let to a financially reliable operator. If food service does not produce a profit, directly or indirectly, the food concession will not be renewed. The proprietor will either quit having food served or contract with a more promising food concessionaire.

The liquor dispensing business in Oregon is different. In many instances the liquor dispenser serves food only because he must in order to keep his dispensing license. The fact that the licensee frequently contracts out the food service is some indication that

it is seldom profitable. See *Van Ripper v. Liquor Cont. Comm.*, 228 Or 581, 365 P2d 109 (1961) (food concession granted "for nothing"). This is further suggested by Regulation 17 of the Oregon Liquor Control Commission which requires the licensee to earn at least 25 percent of his gross receipts from the sale of food. The licensee in *Van Ripper v. Liquor Cont. Comm.*, supra, testified that for a 60-day period the food concessionaire's gross receipts were $263.83; during the same period the gross receipts from liquor sales were $12,569.55. Food service in connection with liquor dispensing is, in many instances, a marginal business. Yet, unlike most marginal businesses which soon shut down, food service must be continued in conjunction with liquor dispensing. The payment of wages of employees of an employer who is in a marginal business is more uncertain than that of employees in an ordinary business.

I deem the relation of liquor dispensers and the employee of the food concessionaires of such dispensers to be so unique that the legislature may constitutionally classify it separately and require the dispenser to be responsible for the wages of such employees.

O'CONNELL and GOODWIN, JJ., join in this specially concurring opinion.