Argued September 24, affirmed November 16, petition for rehearing denied December 8, 1970, petition for review allowed February 9, 1971.

In the Matter of Anna Christine McMaster,
a minor child.

STATE OF OREGON, *Respondent, v.*
McMASTER et ux, *Appellants.*
476 P2d 814

*Douglas S. Green*, Legal Aid Service, Portland, argued the cause and filed the briefs for appellants.

*Elizabeth Preston*, Deputy District Attorney, Portland, argued the cause for respondent. With her on the brief was George Van Hoomissen, District Attorney, Portland.

Before Schwab, Chief Judge, and Langtry and Branchfield, Judges.

LANGTRY, J.

Mr. and Mrs. McMaster appeal from a judgment order of the juvenile department of the Multnomah County Circuit Court, dated September 9, 1969, terminating their parental rights to Anna Christine McMaster under the provisions of ORS 419.523(2) (a).

The child was illegitimately born to Mrs. McMaster on June 16, 1965. In August 1965, on complaint about neglect of the child by neighbors, a petition alleging dependency was filed in the juvenile court by police. The child has been continuously in foster care under supervision of welfare and orders of the court from that time. She was made a ward of the juvenile court in April 1966.

The parents were married on October 11, 1965. The record shows that another child, who remained in their care, was born to them in 1966, and another, born in 1967, lived only two months.

The welfare caseworker assigned to the case testified, "* * * in my caseload this case has probably been given as much or even more attention than any other case * * * home visits, supervision and * * * other community resources such as child guidance, vocational rehabilitation, and so on."

There was evidence that the parents have visited the child sporadically. One period of 10 months elapsed without a visit. They have talked of releasing the child for adoption, have never paid anything toward the child's support, and they have been continually supported by welfare. Mr. McMaster has borderline intelligence, was once committed to Fairview Home for the mentally retarded. He has had numerous jobs all of which he held for only a few days, usually because he simply didn't show up to continue with them. There have been at least fifty occasions in four years when he has abandoned the home, usually with the welfare money, to return when it was gone. A conservator has been appointed to supervise the spending of their welfare money.

They have moved often. While living in Wasco County, Mrs. McMaster was described as wandering the streets late at night with their other child, seeking someone to take her to Portland to look for her husband. There were complaints from neighbors that their auto court home was a hangout for "delinquent type" teenagers, and that cars were running in and out late at night. There was testimony of violent quarrels between them.

Their sporadic visits with Anna had a traumatic effect on the child. A physician who attended her after one of the more recent visits testified that he attributed a bowel disorder the child then had to the visitation:

"* * * [T]he reason is a visit by the genetic mother, that is a traumatic thing for the child and she just can't handle it."

The evidence was much more detailed, but the above resume demonstrates the evidentiary basis the juvenile court judge had for his decision.

Essentially, the errors asserted are that the statutory authority for the court's order is unconstitutionally vague (invoking the Due Process Clauses of the state and federal constitutions), and that the evidence does not support the judgment.

Pertinent provisions of Oregon's juvenile code provide:

ORS 419.474(2). "The provisions of ORS 419.472 to 419.587 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, preferably in his own home, as will lead to the child's welfare and the best interests of the public, and that when the child is removed from the control of his parents the court may secure for him care that best meets the needs of the child."

ORS 419.476. "(1) The juvenile court has * * * jurisdiction * * * [of a child whose parents have]:

"* * * * *

"(e) * * * failed to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being * * *."

ORS 419.523. "(1) The parental rights of the

parent of a child within the jurisdiction of the juvenile court * * * may be terminated * * *:

"(2) * * * [I]f the court finds that the parent or parents:

"(a) Are unfit by reason of conduct or condition seriously detrimental to the child."

In *State v. Blum,* 1 Or App 409, 463 P2d 367 (1970), we construed the latter provision to encompass a situation where a child's only known parent is insane, approving the observation that " 'the emotional welfare of the child requires that he be integrated as a member of a family.' " Much that we said in *Blum* is applicable to the case at bar. We held that the meaning of the "word 'condition' in ORS 419.523(2) (a), separated by the disjunctive from the word 'conduct' is clear." In the case at bar, the juvenile court's decision is based upon the words "condition or conduct" used together. Facts indicating either condition or conduct, or a combination of both, which justifies termination of parental rights is contemplated by the statute. The defendants contend that the use of these words is vague, and under *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969), the statute leaves the public uncertain as to what may result in termination of parental rights, and judges free to decide without statutory standards. In *Simons et ux v. Smith,* 229 Or 277, 366 P2d 875 (1961), an adoption case, the court said that where a statute is attacked as violative of due process, a finding that it is unconstitutional for this reason "should be avoided if possible." See also *State ex rel Nilsen v. Whited,* 239 Or 149, 154, 396 P2d 758 (1964). We do not think that a statute must be so certain in its terms as to describe or enumerate conditions, or transactions amounting to conduct which will result in term-

ination. Rather, we think that this noncriminal statute, at least, is to be viewed as the California Supreme Court did a statute providing for revocation of a school teacher's permit for conduct which is "immoral." *Morrison v. State Board of Education,* 1 Cal3d 214, 82 Cal Rptr 175, 461 P2d 375, 389 (1969). The statute there was construed in conformity with the legislative objectives, and when so viewed, was found to have the requisite specificity. When we view ORS 419.523 (2) (a) in the light of the language quoted above from ORS 419.474 and ORS 419.476, we find the requisite specificity. Such statutes are construed *in pari materia.*

The child's welfare and the best interest of the public are paramount under ORS 419.474. Preference in placement, if a child is within the court's jurisdiction, is to be given to the child's own home, that is, his parent's home. But if the facts and his welfare indicate he should not remain there, the court shall secure for him the care that "best meets the needs of the child."

■ Under court orders, the welfare department cared for the child and also supported and worked with the parents for four years. At that juncture, if not long before, the needs of the child indicated that there was urgency to get her integrated into a family. Due to continuing parental failures shown by the evidence we have reviewed above, even visitations were having emotional and physical traumatic effects upon her.

Under these circumstances, consideration of permanent commitment was in order under ORS 419.523.

The conduct and condition of the parent, described in a quotation from the trial judge, repeated

in *State v. Winters*, 243 Or 313, 413 P2d 425 (1966), was markedly similar in several respects to that of the parents in this case. In *Winters* parental rights were terminated under ORS 419.523 (2) (a).

*Johnson v. People*, 170 Colo 137, 459 P2d 579 (1969), where parental rights were terminated under a statute, a part of which the case report shows was worded almost exactly like ORS 419.474, presents a fact situation similar in substantial respects:

"* * * [The mother] is immature * * * she lacks a sense of responsibility or appreciation regarding child care * * * she is without any means of support from family or employment; and * * * she is limited in employment opportunities. The evidence fully supports the juvenile judge's conclusionary comment that he 'cannot conceive the return of the child to the * * * mother in the foreseeable future.' [In the case at bar the judge said it would be a "tragedy" to return the child to her parents.]

"* * * * *

"* * * The juvenile court was the fact finder * * * [W]e will not disturb such a finding unless the evidence is patently insufficient as a matter of law. The evidence here cannot be so characterized * * *." 130 Colo at 141-42. (Emphasis supplied.)

Similarly, we will not disturb the fact findings of the trial judge, substantiated as they are by the evidence, in the case at bar.

Affirmed.